UNITED STATES, Appellee,

v.

Kevin A. WILLIS, Fireman U.S. Navy, Appellant.

No. 32,496.

NCM 74–2247.

U.S. Court of Military Appeals.

May 16, 1977.

*Lieutenant Commander Carl H. Horst,* JAGC, USN, was on the pleadings for Appellant, Accused.

*Lieutenant Colonel P. N. Kress,* USMC, and *Captain W. D. Blalock,* USMCR, were on the pleadings for Appellee, United States.

Opinion of the Court

PERRY, Judge:

On April 15, 1974, the appellant was tried by general court-martial and convicted of possession and sale of heroin in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. He was sentenced to a bad-conduct discharge, confinement at hard labor for 1 year, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. The convening authority approved the findings and the sentence, except he reduced the period of confinement to 304 days. The United States Navy Court of Military Review affirmed the findings, but it set aside the sentence because of an instructional error at the sentencing stage of the proceedings. A rehearing on the sentence was authorized, if such was deemed to be practicable by the convening authority.

Upon the advice of his staff judge advocate, the convening authority did, in fact, order a rehearing to be held in Lemoore, California. The appellant claims before this Court that at the rehearing he was

erroneously denied the personal attendance and testimony of four relevant and material witnesses pertinent to his character. We agree.

◼ Prior to the rehearing, the appellant's defense counsel presented to the convening authority a written request for the presence of four witnesses who had testified on the appellant's behalf at the original sentence hearing. Noting that the witnesses "would be testifying *only* on matters in extenuation and mitigation" [emphasis added],[1] the convening authority denied the request for the following reasons: (1) as these same witnesses had given similar testimony at the initial proceeding, that testimony was available to be read from the original transcript in lieu of personal appearance; (2) one of the four witnesses was at the time of the rehearing a civilian and, according to the convening authority's understanding, beyond the general court-martial's subpoena process; (3) two of the remaining witnesses were deployed at the time on ships at sea; (4) the fourth witness was at the time deployed on a ship in Guam; and (5) to provide the three military witnesses would represent a considerable expense to the Government. The convening authority concluded that, in balancing the benefit to the appellant from live production of the witnesses in light of the availability of their testimony in the original transcript, against the problems to the Government in procuring those witnesses

again, availability was not required as a matter of law. Accordingly, the convening authority denied the request.

◼ Without examining in detail the propriety of considering as factors in his decision those set out by the convening authority, we believe that the balancing exercise utilized in weighing them was legally defective. Correctly, there is no contest in the litigation in this case as to the witnesses' materiality. However, the Government contends that this "materiality" must be measured against the inconvenience to the service in having to produce the witnesses live before the court-martial, as opposed to some substitute method of offering this evidence, as reading from the record of the original proceedings. Counsel note that this weighing test is suggested in *United States v. Sweeney,* 14 U.S.C.M.A. 599, 606, 34 C.M.R. 379, 386 (1964).[2]

We believe that "materiality" is not susceptible to gradation. The testimony of a given witness either is or is not material to the proceeding at hand. In substance, the theory urged by the Government is that military convenience is a relevant consideration in the decision whether to produce requested witnesses. That is a theory which is even less compelling than "military necessity," which was laid to rest in *United States v. Carpenter,* 1 M.J. 384 (1976). There, Judge Cook, writing for a unanimous Court, held:[3]

---

1. Of course, there can be no question but that the fact that the witnesses were desired as extenuation and mitigation witnesses, as opposed to witnesses on the merits of guilt or innocence, is not relevant. The right to the procurement of defense witnesses, protected constitutionally by the sixth amendment and statutorily by Article 46, Uniform Code of Military Justice, 10 U.S.C. § 846, extends beyond the prefindings stage of a court-martial and to the presentencing stage as well. *United States v. Iturralde-Aponte,* 1 M.J. 196, 197 (1975); *United States v. Manos,* 17 U.S.C.M.A. 10, 14, 37 C.M.R. 274, 278 (1967).

2. It would appear that this "weighing" of the equities never was intended to be the even balancing that the Government would urge, for

the *Sweeney* language cited was addressed and further explained by the Court in *United States v. Manos,* supra at 15, 37 C.M.R. at 279 (1967):

We are, however, concerned with impressing on all concerned the undoubted right of the accused to secure the attendance of witnesses in his own behalf; the need for seriously considering the request; and taking necessary measures to comply therewith *if such can be done without manifest injury to the service.* That is what we meant in *Sweeney,* supra, in speaking of weighing the relative responsibilities of the parties against the equities of the situation. [Emphasis added.]

3. *United States v. Carpenter,* 1 M.J. 384, 386 (1976).

Although "military necessity" or various personal circumstances relating to a requested witness may be proper criteria to determine when his testimony can be presented, the sole factor for consideration in determining whether he will testify at all is the materiality of his testimony. *United States v. Iturralde-Aponte*, [1 M.J. 196 (1975)].

To further quote from the opinion in *Carpenter*:

[O]nce materiality has been shown the Government must either produce the witness or abate the proceedings. *United States v. Daniels*, 23 USCMA 94, 48 CMR 655 (1974).

Here, while it may be inconvenient and possibly even costly [4] to the Government to provide these four witnesses, the appellant may not be compelled to accept a substitute for their appearance, in person, as material witnesses to what would be an appropriate sentence. *United States v. Carpenter, supra.*

The decision of the United States Navy Court of Military Review is reversed as to the sentence. The sentence is set aside; rehearing thereon is authorized.

Chief Judge FLETCHER concurs.

COOK, Judge (dissenting):

In my opinion, the defense application to the trial judge for production of the requested witnesses superseded the proceedings before the convening authority and obviated consideration of the reasons he gave for his denial of the defense request. *United States v. Thornton*, 8 U.S.C.M.A. 446, 449, 24 C.M.R. 256, 259 (1957). On the basis of the record before him, I am satisfied that the trial judge did not abuse his discretion in denying the application.

Nevertheless, considering the matter as though the decision of the convening authority is also at issue, *United States v. Manos*, 17 U.S.C.M.A. 10, 14, 37 C.M.R. 274, 278 (1967), I believe the result reached by the majority is wrong.

As my brothers rely in large measure on my opinion in *United States v. Carpenter*, 1 M.J. 384 (1976), my present position obviously demands explanation. *Carpenter* did not cover virginal ground. To put it into proper perspective, therefore, requires that I begin, not with what I said there, but with a review of the law and the earlier cases on the subject.

The Sixth Amendment to the United States Constitution guarantees an accused the right "to have compulsory process for obtaining witnesses in his favor." The right to process does not include the right to transfer to the public the expense of transporting the witness from wherever he might be to the place of trial; to maintain him at the place of trial for as long as is necessary to obtain his testimony; and to return him to the place from whence he came. However, the separate constitutional right to equal protection of the law [1] assures that an accused is not denied the opportunity to exercise the right to compulsory process because he is financially unable to pay the costs and expenses of bringing the witness to the courtroom. *See Coppedge v. United States*, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). But, not all discrimination by the Government is disallowed. Only if the differentiation is invidious, that is, does not reasonably further a rational governmental interest, is it constitutionally invalid. *Weinburger v. Wiesenfeld*, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975). This concept of balance is embodied in the Federal civilian criminal rule

---

4. The cost to the Government in possibly having to produce the live appearance of these witnesses was a factor expressly considered by the staff judge advocate in his pretrial advice to the convening authority; despite this, however, the staff judge advocate opined that "it is still considered appropriate and practical to direct a rehearing."

1. The right to equal protection of the law is secured against the Federal Government under the United States Constitution as an aspect of the guarantee of "due process of law" provided by the Fifth Amendment. *Schlesinger v. Ballard*, 419 U.S. 498, 500 n. 3, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975).

regarding the defendant's right to subpoena witnesses for his defense at public expense.[2]

A poor defendant has the same right as a rich accused to subpoena a witness, but lack of funds can preclude exercise of the right. So that all accused are equally assured of process to obtain witnesses for their defense, the burden of expense for a defendant "financially unable to pay," is imposed upon the people. Fed.R.Crim.P. 17(b). The right to call upon the public to bear the burden of expense is conditioned, however, by the requirement that the "presence of the witness is necessary to an adequate defense." While there appears to be some difference of opinion as to the burden of proof,[3] most Federal Courts of Appeals have held that rule 17(b) vests "wide discre-

tion" in the trial judge in determining whether the presence of a requested witness at trial is necessary to an adequate defense.[4] As the Court of Appeals for the Eighth Circuit observed in *Slawek v. United States*, 413 F.2d 957, 960 (1969), a defendant is free to waste his own money by having an unnecessary defense witness testify in person, but his personal profligacy confers no right "to squander government funds merely for the asking."

Previous decisions by this Court have identified two differences between rule 17(b) and military procedure. First, unlike the rule, Article 46, Uniform Code of Military Justice, 10 U.S.C. § 846, and paragraph 115a, Manual for Courts-Martial, United States, 1969 (Rev.),[5] which define the right

---

2. For purposes of this opinion, I shall not consider whether the constitutional right to compulsory process at public expense may be subject to other equities, such as the nature and scope of the difficulties that would be encountered by the Government in its efforts to obtain the presence of the witness. In *United States v. Rigdon*, 459 F.2d 379, 380 (6th Cir. 1972), *cert. denied*, 409 U.S. 1116, 93 S.Ct. 917, 34 L.Ed.2d 700 (1973), the court sustained a trial ruling denying a subpoena for defense witnesses, noting that the trial judge could "particularly [consider] the danger to the public inherent in transporting [prison] inmates over these distances." Similarly, this Court has said that the Government must take necessary measures to comply with a request for a defense witness "if such can be done without manifest injury to the service." *United States v. Manos*, 17 U.S. C.M.A. 10, 15, 37 C.M.R. 274, 279 (1967). It perceived such a situation to exist for a witness for the sentencing proceedings when he was absent on a "vessel on operational commitments or . . . [essential] to its performance of its primary mission." *Id.* at 16, 37 C.M.R. at 280.

3. *Compare Welsh v. United States*, 404 F.2d 414 (5th Cir. 1968), *with United States v. Stoker*, 522 F.2d 576 (10th Cir. 1975). *See also* Wright, Federal Practice and Procedure § 272 (1969).

4. *United States v. Beasley*, 479 F.2d 1124, 1128 (5th Cir. 1973), *cert. denied*, 414 U.S. 924, 94 S.Ct. 252, 38 L.Ed.2d 158 (1973); *United States v. Sprouse*, 472 F.2d 1167 (6th Cir. 1973), *cert. denied*, 411 U.S. 970, 93 S.Ct. 2164, 36 L.Ed.2d 693 (1973); *United States v. Morris*, 451 F.2d 969 (8th Cir. 1971); *United States v. Mason*, 440 F.2d 1293 (10th Cir. 1971); *United States v. Panczko*, 429 F.2d 683 (7th Cir. 1970), *cert. denied*, 400 U.S. 946, 91 S.Ct. 253, 27 L.Ed.2d

252 (1970); *Amsler v. United States*, 381 F.2d 37 (9th Cir. 1967).

5. In pertinent part, Article 46, Uniform Code of Military Justice, 10 U.S.C. § 846, provides:

The trial counsel, the defense counsel, and the court-martial shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe.

Paragraph 115a, Manual for Courts-Martial, United States, 1969 (Rev.), reads as follows:

A request for the personal appearance of a witness will be submitted in writing, together with a statement, signed by the counsel requesting the witness, containing (1) a synopsis of the testimony that it is expected the witness will give, (2) full reasons which necessitate the personal appearance of the witness, and (3) any other matter showing that the expected testimony is necessary to the ends of justice. The decision on the request must be made on an individual basis in each case by weighing the materiality of the testimony and its relevance to the guilt or innocence of the accused, together with the relative responsibilities of the parties concerned, against the equities of the situation. If the convening authority determines that the witness will not be required to attend the trial, the request may be renewed at the trial for determination by the military judge . . . as if the question arose for the first time during the trial.

The trial counsel may consent to admit the facts expected from the testimony of a witness requested by the defense if the prosecution does not contest these facts or if they are unimportant. An application for the attendance of any witness may be withdrawn if the trial counsel and defense counsel enter

to secure defense witnesses, do not condition exercise of the right at public expense on the accused's inability to pay. *United States v. Sweeney,* 14 U.S.C.M.A. 599, 34 C.M.R. 379 (1964). Secondly, where rule 17(b)'s requirement that the presence of the witness be "necessary to an adequate defense" has the effect of limiting the right to a witness whose testimony is pertinent to the merits, the military rule includes a witness for the sentence proceedings. *United States v. Manos, supra.* Whether there are other differences need not now be considered. In two particulars the military rule is identical to the Federal civilian rule. First, the person ruling on an accused's application for the personal presence of a defense witness has "wide discretion" in determining whether the presence of the witness is necessary to the defense case; secondly, a ruling adverse to the accused will not be overturned on review unless the record demonstrates "an abuse of discretion." *United States v. Sweeney, supra* at 603, 34 C.M.R. at 383.

It has been held that "numerous factors" may be considered in determining the necessity for the personal presence of a defense witness. *United States v. Joseph,* 533 F.2d 282, 284 (5th Cir. 1976); *United States v. Moudy,* 462 F.2d 694 (5th Cir. 1972). Thus, an application for a defense witness may properly be denied if it comes inexcusably late. *Pouncey v. United States,* 121 U.S.App.D.C. 264, 349 F.2d 699 (1965). Even expected testimony, which, considered by itself, appears to be material to the defense, may not necessarily require the presence of the witness at trial. In the context of the entire defense case, the presence of a particular witness may emerge as unnecessary. This situation most commonly arises when several witnesses are requested by the defense, and the expected testimony of each is substantially the same. Uniformly, the Federal civilian courts have held that it is not an abuse of discretion to deny a request for a defense witness when the expected testimony of that witness will be merely cumulative.[6]

Necessity for personal presence of a witness at trial may also be obviated by recourse to effective alternatives. If the Government is willing to concede the existence of the facts to which the witness is expected to testify, in other than an extraordinary case, there would manifestly be no need for the witness to appear at trial. *See* paragraph 115a, MCM; *United States v. Stewart,* 445 F.2d 897 (8th Cir. 1971). Of course, if the facts to which the witness would testify would require a finding of not guilty, it is not likely that the Government would stipulate, or that it could do so consistent with its continuation of the prosecution. Paragraph 115a, MCM. But, the important thing is that the Government's concession of facts can be an effective substitute for subpoena of a requested witness.

Another factor that can be considered is whether the credibility of the requested witness would be a circumstance in the ultimate determination of the matter as to which his testimony relates. The Tenth Circuit Court of Appeals, for example, has held that under rule 17(b), the Government is not obligated to subpoena a requested defense witness whose anticipated testimony would be "grossly incredible." *United States v. Coppola,* 479 F.2d 1153, 1164 (1973). *See also Greenwell v. United States,* 115 U.S.App.D.C. 44, 317 F.2d 108, 110 (1963). Whether this Court would go that far under the Uniform Code and Manual rule is arguable. *See United States v. Kuefler,* 14 U.S.C.M.A. 136, 33 C.M.R. 348 (1963). The effect of the acknowledged credibility of the witness, however, has been considered. In his dissent in *United States v. Thornton,* Judge Latimer alluded to it as follows:

> It may well be that in a case where credibility of witnesses is a material factor in ascertaining the truth of disputed

---

into a stipulation as to the testimony of that witness. See 48*d* and 154*b* (Stipulations).

**6.** *United States v. Romano,* 482 F.2d 1183 (5th Cir. 1973); *United States v. Plemons,* 455 F.2d 243 (10th Cir. 1972); *United States v. Panczko, supra; Slawek v. United States,* 413 F.2d 957 (8th Cir. 1969).

testimony, stipulated evidence might not suffice to assure an accused a fair trial. 8 U.S.C.M.A. at 451, 24 C.M.R. at 261.

Indirectly, the Court confronted the question of the impact of the credibility of a requested witness upon the necessity for his presence at trial in *United States v. Sweeney, supra.* There, the accused requested four witnesses as to the merits, and refused an offer by trial counsel to stipulate to their expected testimony. The trial judge denied the request. The Court sustained the denial as to two of the witnesses, but concluded that the ruling was erroneous as to the others. The latter had been superiors of the accused, and their testimony was expected to establish the accused's good character and his military proficiency. The Court observed that such testimony would itself be "sufficient to raise a reasonable doubt," and that it was "most worthy of weight in the military where an individual is carefully observed by his superiors." *Id.* at 604, 34 C.M.R. at 384. It further remarked that the only testimony "directly linking" the accused to the offenses came from a government witness "of unsavory character who had previously lied under oath about the same matters." *Id.* at 605, 34 C.M.R. at 385. In light of these circumstances, the Court concluded that the personal testimony of the witness "might well have tipped the balance in favor of the accused." *Id.* Significantly, the Court went on to caution that its holding did not establish a general rule that the personal presence of a character witness was always necessary. It expressly pointed out that expected testimony "on the merits differs widely" from that offered in extenuation and mitigation. *Id.* at 606, 34 C.M.R. at 386. The effect of that difference was later considered in *United States v. Manos, supra.*

In *Manos,* the defense character witnesses were desired for the sentencing proceeding. As pointed out earlier, the Court determined that, unlike rule 17(b) in the Federal civilian courts, military law did not limit the accused to compulsory process only for a witness whose testimony related to the merits. Although the Court did not explicitly mention the caveats of *Sweeney,* the form of its condemnation of the trial ruling constituted an application of them. It said that on the record it was an abuse of discretion "not to have made the witnesses available *or, at the least, provided for taking their depositions." United States v. Manos, supra,* at 16, 37 C.M.R. at 280 (emphasis added). *Manos,* therefore, recognized, as the Federal courts have, that in appropriate circumstances an effective substitute form of presenting the expected testimony can render the personal presence of the witness unnecessary; and that special difficulties in procuring a character witness for the sentence proceeding provide an appropriate occasion for substitution.

It is at this point that *Carpenter* can appropriately be discussed. *Carpenter* did not abjure the *Manos* determination that adequate substitute forms of presenting a witness' testimony can be used to satisfy a defense request for a witness. On the contrary, after citing both *Manos* and *Sweeney,* I noted that the right to compel the attendance of a defense witness "is not absolute." 1 M.J. at 385.

The testimony of the witness in *Carpenter* related to the merits and the sentence. The witness was a former commanding officer of the accused. Referring to *Sweeney,* I remarked on the "unique and favored position" of such a witness as regards the kind of testimony it was expected he would give. *Id.* Further, I noted that after the initial denial of his request, defense counsel proposed, but the trial judge summarily rejected, arrangement for sessions of the court to allow the witness to appear in person. Also rejected was a defense proposal that the witness' testimony be obtained by deposition. It was on consideration of all these circumstances, that the Court concluded the accused was prejudiced by the denial of his request for the presence of the witness. It is apparent, therefore, that my opinion in *Carpenter* was not intended to promulgate new principle. However, the part of the opinion quoted by the majority

now appears to be susceptible of a construction that broadens the subpoena right beyond anything previously decided.

Especially egregious is the statement in *Carpenter* that "once materiality has been shown the Government must either produce the witness or abate the proceedings." *Id.* The immateriality of the witness' expected testimony can demonstrate his presence at trial is unnecessary; but it does not follow that the materiality of the testimony proves the need for the personal attendance of the witness. As I pointed out earlier, other circumstances may establish that, notwithstanding the materiality of the testimony, it can be presented to the court in a form other than personal testimony by the witness from the stand.

Perhaps, too, my opinion in *Carpenter* is flawed by the absence of specific comment on the differences, noted in *Sweeney* and *Manos,* between expected testimony on the merits and expected testimony on the sentence, and that as to the latter a substitute means of presenting the expected testimony may more readily obviate the need for personal appearance by the witness.

I regret the deficiencies of my opinion in *Carpenter.* Whatever they are, the opinion hews to precedent. In my opinion, that precedent justifies the rulings in this case.

The proceeding as to which the rulings were made was a rehearing on the sentence before a trial judge alone. The expected testimony of each witness dealt with facts and opinion as to accused's character, personality, and performance of duty, and a belief by the witness that the accused had a high potential for continued value to the Navy, despite his conviction for possession and sale of heroin. All the witnesses had testified to the same matters at the original trial, and an authenticated transcript of their testimony was available. In *United States v. Edwards,* 469 F.2d 1362, 1370 (1972), the Court of Appeals for the Fifth Circuit held that determination of the necessity for personal presence of a defense witness should not be predicated "solely" on the fact that former testimony on the subject by the witness is available. The reason, said the court, was that when "a credibility choice is crucial to the resolution of an issue of fact, the defendant is entitled to have the same jury then charged with guilt determination weigh credibility on the basis of their personal observations of the appearance and demeanor of the defendant's witnesses." *Id.*

Here, the credibility of the requested witnesses was not crucial to the accused's case. In fact, their credibility was not disputed. What mattered, therefore, was the substance of their testimony. Defense counsel did not suggest that any of the witnesses had something different to add to what he had testified to at the original trial. In *Manos,* the Court indicated that for sentence purposes a deposition was a proper alternative to in-court testimony for a witness aboard a vessel on "operational commitments." 17 U.S.C.M.A. at 16, 37 C.M.R. at 280. Former testimony is similarly an appropriate and effective substitute when the credibility of the witness is not in issue. Defense counsel refused to use it, and elected to introduce into evidence, without objection by government counsel, separate statements by each witness; he represented this course as being "more . . . expeditious" than use of the trial transcript. Putting aside the impact of this action on the question of whether the accused was prejudiced by the denial of his request, a circumstance considered by Judge Wray in the Court of Military Review before, I agree with the conclusion of that court that there was "no abuse of discretion by the convening authority nor by the trial judge in denying appellant's request for the compulsory production of the witness under the circumstances of this case."

I would affirm the decision of the Court of Military Review.