UNITED STATES, Appellee,

v.

Timothy WILLIAMS, Staff Sergeant, U. S. Air Force, Appellant.

No. 33,226.
ACM 22076.

U. S. Court of Military Appeals.

Aug. 1, 1977.

*Colonel Robert W. Norris* and *Major Bruce R. Houston* were on the pleadings for Appellant, Accused.

*Colonel Julius C. Ullerich, Jr.,* was on the pleadings for Appellee, United States.

Opinion of the Court

PERRY, Judge:

The appellant, Staff Sergeant Timothy Williams, was convicted by a general court-

martial at Clark Air Base, Philippines, of possession of heroin, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. He was sentenced to a dishonorable discharge, confinement at hard labor for 2 years, forfeiture of $250 pay per month for 24 months, and reduction to the lowest enlisted grade. The convening authority approved the findings and the sentence. While the United States Air Force Court of Military Review affirmed the findings, it reduced the sentence to dishonorable discharge, confinement at hard labor for 15 months, forfeiture of $120 pay per month for 15 months, and reduction to the lowest enlisted grade. We granted review to determine whether at trial the appellant was erroneously denied the personal attendance and live testimony of two requested defense witnesses. We conclude that he was.

I

On February 11, 1976, the charge involved in these proceedings was referred to trial. Eight days later, the appellant's counsel submitted a letter to the trial counsel, pursuant to paragraph 115a of the Manual for Courts-Martial, United States, 1969 (Revised edition), requesting the personal appearance as a defense witness of former Chief Master Sergeant Smiley. Appellant's counsel represented that Smiley would testify that he had retired from the Air Force after nearly 33 years of service; that during the period 1971–1972, the appellant at one time or another either had been under his immediate supervision as noncommissioned officer in charge of operations for the squadron or had been under his supervision as the same unit's first sergeant; that they had had frequent daily contact working together in a two-man office; that the

appellant's duty performance had been outstanding and that he had been cooperative and had worked well with others; that on the basis of his daily contact with the appellant and with others in their common community he knew the appellant's reputation for truth and veracity to have been very good and that the appellant's military character as a loyal, obedient and well-disciplined member of the military service had been beyond reproach; that in all their dealings the appellant always had been truthful and honest; and, that to his knowledge the appellant had never been involved in drugs. In the letter, the appellant's counsel revealed that the witness was crucial to the defense case, which was anticipated to be a battle of credibility, with the appellant asserting that his possession of the heroin was unknowing.[1] Additionally, if the case should reach sentencing, the defense counsel indicated that the witness would give critical testimony concerning what would be a proper sentence. Summing up their request, the appellant's counsel stated: "The personal appearance in court of the witness is necessary so that the court members will be able to observe his great credibility and the convincing manner of his presentation of his evidence."

Trial counsel "denied" the request.[2] The defense then sought a decision from the convening authority and further requested, should Smiley's live appearance be denied, that permission be granted the defense to take Smiley's oral deposition. The convening authority's staff judge advocate responded that since the convening authority would be absent from the area until after the scheduled trial date of February 23 and therefore unable to act on the request, the defense counsel should present his request at trial.

1. Uncontested evidence at trial showed that a photo album taken from the appellant's baggage during a customs inspection at Korat Air Base, Thailand, was found to have hidden in it a packet of heroin. The appellant testified that the album was not his and that he had no idea how it came to be in his baggage.

2. In *United States v. Carpenter*, 1 M.J. 384, 386 n. 8 (1976), this Court noted the problem which

exists because of the Manual procedure that requires the defense counsel to submit requests for witnesses to the trial counsel—his partisan adversary—for approval. For the moment it will suffice to merely reiterate what Judge Cook stated there—that "[u]ntil the situation is clarified, counsel should be alert to the problems."

At an Article 39(a)[3] session held on February 24, the defense not only moved for Smiley's attendance, but also requested that the judge defer ruling on their motion until the convening authority could act on the request. The judge concurred and continued the trial until March 22. Thereafter, the appellant's counsel resubmitted his request to the convening authority on February 25. The request was denied on March 5. On March 8, appellant's counsel requested by letter to the convening authority that he be given the opportunity to take Smiley's oral deposition. This request, too, was denied, with the suggestion that the witness' written affidavit be obtained instead.

Meanwhile, on February 17, the defense counsel had submitted another request for witnesses, this time asking for the presence of Master Sergeants Messenger and Manis. Counsel in the letter represented that Messenger, the appellant's immediate supervisor from January to July 1975, and Manis, his supervisor from May 1973 to January 1975, would render testimony of the same qualitative nature as would have Smiley, only, of course, relevant to the respective time periods when each was acquainted with the appellant. The importance to the defense of each was stated in terms similar to that used in the request for Smiley.

By letter dated February 18, the trial counsel advised the appellant's counsel that he was forwarding the request for both men, recommending approval. The convening authority's staff judge advocate forwarded the request to his major command—necessary since the request involved travel from the continental United States to an overseas installation—recommending approval because the witnesses were deemed "necessary in defense of the accused." Despite this, when the trial convened on March 22, the appellant's counsel announced that he had been advised on March 17 that his request for Messenger had been denied.

At trial, appellant's counsel made an appropriate motion for the presence both of Smiley and Messenger. The military judge denied the requests. In light of this, the testimony of each witness was presented to the factfinders by way of a stipulation of expected testimony. Further, in its efforts to support the appellant's testimony through a showing of his good character and reputation for truth and veracity, the defense presented airman performance reports for the period August 1962 to July 1975, tending to show that the appellant's military career had been outstanding. Additionally, evidence of the appellant's having received the Joint Service Commendation Medal in 1975 and the Air Force Commendation Medal in April 1972 was revealed. Besides the live testimony of Manis and the stipulations of expected testimony of Smiley and Messenger, the testimony of Technical Sergeant Heryford was presented. Heryford had been the noncommissioned officer in charge of the appellant's duty section from July to October 1975. He swore that based on his daily contact, he was of the opinion that the appellant's military character was outstanding and that he would believe the appellant under oath.

II

In *United States v. Carpenter*, 1 M.J. 384, 386 (1976), we stated, *inter alia*:[4]

[O]nce materiality has been shown the Government must either produce the witness or abate the proceedings. *United States v. Daniels*, 23 U.S.C.M.A. 94, 48 C.M.R. 655 (1974). (footnote omitted)

*Accord, United States v. Willis*, 3 M.J. 94 (C.M.A.1977). Nevertheless, counsel for the Government argues that there is a caveat to this general principle. The contention is best stated in the language of paragraph 137, MCM, which states, *inter alia*:

The military judge or the president of a special court-martial without a military judge may as a matter of discretion limit

---

3. Article 39(a), Uniform Code of Military Justice, 10 U.S.C. § 839(a).

4. The right of a military accused to government process to obtain witnesses is found in Article 46, U.C.M.J., 10 U.S.C. § 846.

the number of witnesses called by either side to testify to the same matter if it appears that the testimony of the excluded witnesses would be merely cumulative.

The asserted basis for this exception is that, without it, the defense literally could make a given prosecution "so burdensome as to be practically intolerable or even impossible." In other words, the Government submits that this exception is necessary to prevent abuse of our holdings in *Carpenter* and in *Willis*.

There is support for the Government's position in the civilian sector of federal practice. Federal Rule of Criminal Procedure 17(b) states:

(b) *Defendants Unable to Pay*

The court shall order at any time that a subpoena be issued for service on a named witness upon an *ex parte* application of a defendant upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense. If the court orders the subpoena to be issued the costs incurred by the process and the fees of the witness so subpoenaed shall be paid in the same manner in which similar costs and fees are paid in case of a witness subpoenaed in behalf of the government.

Assuming the requisite showing of need, then, the defendant in Federal district court under rule 17(b), and the accused in the military trial forum under Article 46 and our decisions in *Carpenter* and *Willis*, are on a similar footing with respect to obtaining free process upon defense-requested witnesses: the witnesses must be furnished upon a showing that they are necessary to an adequate defense—that is, that they are material or relevant.[5]

The underpinnings of rule 17(b)—and, in pertinent part, its military counterpart, Article 46—are the defendant's Sixth Amendment[6] right to compulsory process for obtaining favorable witnesses and his related Fifth Amendment[7] due process right not to suffer unlawful discrimination growing out of his inability to pay for them. *See United States v. Julian*, 469 F.2d 371 (10th Cir. 1972). It is a denial of due process to deprive a defendant of the benefit of the favorable testimony of a relevant witness simply because the defendant could not pay the expenses of obtaining that testimony. *See United States v. Joyner*, 494 F.2d 501 (5th Cir. 1974), *cert. denied;* 419 U.S. 995, 95 S.Ct. 308, 42 L.Ed.2d 268 (1974). *See also Welsh v. United States*, 404 F.2d 414 (5th Cir. 1968).

There is, however, *no* constitutional right to the testimony of a witness which would *not* be relevant, and, therefore, it is not a violation of a defendant's right to due process to deny him such a witness. Similarly, a defendant has no constitutional right, under a claim of due process, to a witness whose testimony would be merely cumulative to the testimony of other witnesses. *See Wagner v. United States*, 416 F.2d 558 (9th Cir. 1969), *cert. denied*, 397 U.S. 1015, 90 S.Ct. 1249, 25 L.Ed.2d 429 (1970). If a defendant is furnished the wherewithal to present his case in court, fully and fairly, he hardly can complain that denial of a cumulative witness denied him due process as such. There being no constitutional impediment to the denial of cumulative witnesses, the persuasive rationale for a caveat

---

5. It has been well established in the civilian federal system that this right to process is not absolute, but rather that trial courts have wide latitude in the exercise of discretion in this area, and that only an abuse of that discretion constitutes reversible error. *United States v. Greene*, 497 F.2d 1068 (7th Cir. 1974), *cert. denied*, 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975); *United States v. Lepiscopo*, 458 F.2d 977 (10th Cir. 1972); *Findley v. United States*, 380 F.2d 752 (10th Cir. 1967); *United States v. Zuideveld*, 316 F.2d 873 (7th Cir. 1963). However, it would appear that the exercise of this discretion properly is addressed to a determination of the existence or nonexistence of the two requirements of rule 17(b): indigency of the defendant and materiality of the witness' testimony. In relevant part, the law is similar in the military. *See United States v. Carpenter, supra* at 386, and cases cited therein.

6. U.S.Const. amend. VI.

7. U.S.Const. amend. V.

to rule 17(b) and to our interpretation of Article 46 is best illustrated by the following language found in *United States v. Romano*, 482 F.2d 1183, 1195 (5th Cir. 1973) (emphasis added):

> The trial judge found that it was unnecessary to call all the fifteen witnesses to an allegedly exculpatory conversation because their testimony would be cumulative only, and he therefore issued Rule 17(b) subpoenas to only three witnesses to the conversation. . . . District Courts have the discretion *to prevent the abuse of Rule 17(b)* by refusing to subpoena witnesses whose testimony would be cumulative only. *See United States v. Chapman*, 5 Cir. 1972, 455 F.2d 746, 748; *Thompson v. United States*, 5 Cir. 1967, 372 F.2d 826, 828.

Likewise we believe discretion exists in courts-martial in order to prevent similar abuses.

Consequently, we hold that if the testimony of a given witness is material, the live presence of that witness must be furnished or the proceedings abated, *United States v. Willis, supra; United States v. Carpenter, supra,* unless, in the sound discretion of the trial judge, the testimony of that witness would be merely cumulative [8] to the testimony of other defense witnesses.[9]

### III

As we earlier alluded, there is no contest in this case as to the materiality of the requested witnesses who were denied. The Government contends that the testimony of Smiley and Messenger would have been cumulative to that of Manis and Heryford and to other defense evidence reflecting the "generally outstanding military service on the part of the appellant over his whole thirteen-year military career." We reject that contention.

As to the submission that Smiley and Messenger would have given testimony cumulative to that given by Manis and Heryford, the Government's contention is erroneous. Smiley would have testified about the appellant's character and job performance as he knew it during the period 1971–1972; Manis, who did testify, gave evidence concerning the period May 1973 through January 1975; Messenger would have addressed the following months of January 1975 to July 1975; and, finally, Heryford gave his opinions based on his exposure to the appellant from July through October 1975. Patently, when the appellant's entire defense rested on convincing the factfinders that he has always been a conscientious, honorable, truth-telling serviceperson, testimony of witnesses who knew him at different and succeeding periods of time in the military and whose testimony was limited to their observations and opinions formulated during those different periods of time is not cumulative in any sense. Nor do we believe that the testimony of the witnesses denied can fairly be classified as "merely cumulative" of evidence presented in the forms of ratings in airman performance reports and of military awards and decorations. As the expected testimony of wit-

---

**8.** We pause to note that a trial judge, in ruling whether the testimony of a given witness would be "merely cumulative," must necessarily in his sound discretion decide whether, under the circumstances of the given case, there is anything to be gained from an additional witness saying the same thing other witnesses have said. Certainly, for instance, the fact that three people saw or heard the same thing and would render virtually identical testimony may be significantly more persuasive to a jury than if only one person were so situated. In other words, there sometimes is an important impact to be expected from some repetitive testimony. The key is determining where and when to draw the line so as to assure an accused all the process he is due for a full and fair trial, while at the same time assuring that the system is not abused by frivolous requests. *See United States v. Romano*, 482 F.2d 1183, 1195 (5th Cir. 1973).

**9.** We believe that in the normal situation, once the testimony of witnesses has been found by the judge to be merely cumulative and once the judge has ruled how many of these witnesses will be permitted to testify pursuant to government-paid process, only the defense may properly decide *which* of these witnesses will be utilized. To permit otherwise would be to tolerate someone other than the defense counsel making this legitimate and essential defense tactical decision.

nesses Smiley and Messenger would have been material to the appellant's cause both on the merits and, eventually, as to sentencing, and as such testimony cannot genuinely be labeled as merely cumulative of other evidence which was presented to the court, the military judge prejudicially erred in denying the appellant's motion for the live production of their testimony.

The decision of the United States Air Force Court of Military Review is reversed. The findings and the sentence are set aside. A rehearing may be ordered.

FLETCHER, Chief Judge (concurring).

I cannot delineate the position of my Brother Cook. The judge authored *Carpenter*[1], but then in *Willis*[2] he tells us that he did not mean what he said in *Carpenter*. In the present case he finds it "gratifying" that the majority "acknowledge 'a caveat' to the implacable consequence of content materiality espoused in *Willis*," yet *Willis* is a mirror of the law of *Carpenter*. To be chastised by a brother judge over a year later for following the dictates of his opinion which did not contain "a caveat" is the completion of the enigma of the circle.[3]

To resolve my thinking, I now articulate the concept as to the procurement of witnesses that I will use in this case and future cases to resolve the problem of when witnesses are necessary. If the testimony of a witness is material in any respect to the exclusion of all other witnesses' testimony, then his presence is mandated.[4] Exhibits do not in my thinking equate to live witnesses. Using this standard, I must concur with the opinion of Judge Perry.

COOK, Judge (dissenting):

The trial of this case took place in the Republic of the Philippines. The two witnesses whose presence was requested by the

accused were in the United States; one was a retired master sergeant and the other was on active duty in Missouri.

In my dissent in *United States v. Willis*, 3 M.J. 94, 96 (C.M.A.1977), I set out my disagreements with the majority on the general right of an accused to obtain the presence of a defense witness at government expense. Suffice it to repeat here my view that the surface materiality of the testimony expected of the requested witnesses does not, alone, establish the necessity for a witness' presence at trial. It is gratifying, therefore, that the principal opinion now acknowledges "a caveat" to the implacable consequence of content materiality espoused in *Willis*, when the issue is whether the proposed testimony "would be merely cumulative."

As to the merits, the defense had available to it extracts from the accused's service record dating back to 1962. These established that he was outstanding in performance and character. They reflect, among other things, that the accused was awarded the Joint Services Medal for his efforts during the evacuation of Vietnam between March and April 1975, and the Air Force Commendation Medal for his work between October 1970 and February 1972. Rating reports variously lauded him for possession of the "highest degree . . . of integrity" (Ex. E); his "high moral character" (Ex. M); and his "very high moral standards and ideals" (Ex. N). The report for the period of February 1972–1973 indicates that the accused's "greatest strength is his character as a whole." In addition, two witnesses were made available for personal testimony as to the accused's truthfulness.

Master Sergeant Smiley, the retired airman, knew the accused for a period of 8 months between 1971 and 1972. The pretrial request for his presence was denied for

1. *United States v. Carpenter*, 1 M.J. 384 (1976).

2. *United States v. Willis*, 3 M.J. 94 (C.M.A. 1977).

3. To complicate this matter to its $n$th degree, Judge Perry, who was not a participant in *Car-*

*penter*, in reliance upon the written precedent of this Court finds himself at odds with the author judge.

4. In applying this concept I adhere to the considerations set forth by Judge Perry in his opinion in notes 8 and 9.

two reasons: first, because of the brevity of his association with the accused and the interval of approximately 4 years between that association and the trial; and, second, it was deemed that his testimony would be cumulative. The same circumstances were before the trial judge on renewal of the request for Smiley's presence. Further, defense counsel conceded, and the exhibits established, that Smiley was the "reporting official" on the 1971–1972 performance report on the accused. It also appeared that counsel had stipulated to the expected testimony of the witness. In these circumstances, I believe the trial judge, as well as the convening authority, did not abuse his discretion by denying a request for the presence of this witness. *United States v. Lepiscopo*, 458 F.2d 977 (10th Cir. 1972).

The second witness whose presence was requested by the accused, but was denied by the trial judge, was Sergeant Messenger. Messenger had known the accused for a period of 6 months between January and July 1975, was his immediate supervisor, and had been the "reporting official" for a performance report which included that period. Evidence presented to the trial judge indicated that the defense had requested Master Sergeant Manis, who had been the accused's supervisor in the same organization as that of Messenger during the period from May 1973 through November 1974. That request was granted, and Manis was brought to Clark Air Base in the Philippines from Nebraska. Another defense witness was Technical Sergeant Heryford, who had served with the accused from July 1975 through August 1975 at Clark Air Force Base. Thus, the defense had two witnesses whose testimony as to the accused's performance of duty and reputation for truthfulness bracketed that of Messenger along with the performance reports filed by them that covered the same subject matter. I am convinced, therefore, that the trial judge did not abuse his discretion by denying the request for Messenger's presence on the basis of the evidence. *United States v. Plemons*, 455 F.2d 243 (10th Cir. 1972).

I would affirm the decision of the United States Air Force Court of Military Review.