UNITED STATES, Appellee,

v.

Rodolfo Camacho TANGPUZ, Mess
Management Specialist Seaman,
United States Navy, Appellant.

No. 34,697.
NCM 77 0793.

U. S. Court of Military Appeals.

Oct. 10, 1978.

Appearances: For Appellant—*Captain G. M. Potter*, USMC (argued).

For Appellee—*Lieutenant Christine M. Yuhas*, JAGC, USNR (argued); *Lieutenant Commander N. P. DeCarlo*, JAGC, USN (on brief).

## Opinion

COOK, Judge:

The appellant was tried by general court-martial with members at the U.S. Naval Station, Subic Bay, Republic of the Philippines, during December 1976 and January 1977. In accordance with his plea, he was convicted of an unauthorized absence of approximately 22 months, in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886. He was sentenced to a bad-conduct discharge, confinement at hard labor for 6 months, reduction to pay grade E–1, and total forfeitures. The findings and sentence were approved by the convening authority. However, on June 16, 1977, the Naval Clemency and Parole Board suspended the punitive discharge for a period of 12 months, with provision for automatic remission, and restored appellant to pay grade E–3. We granted review to de-termine if the military judge abused his discretion by denying appellant's request for defense witnesses.

Prior to his unauthorized absence, the appellant had served approximately 8 years in the United States Navy as a mess management specialist with an unblemished record. Approximately five of those years were served at sea. Before trial, defense counsel requested trial counsel's aid in locating four individuals who had served as the commanding officer of the USS HALEAKALA (AE–25) during the period of appellant's attachment to that vessel, specifically, Captains J. F. Ward and R. E. Schwoefferman, and Commanders T. G. Kiefaber and P. K. Fitzwilliam. Captain Ward had prepared favorable performance evaluations for appellant on September 16, 1970, and May 10, 1971; Captain Schwoefferman had prepared such evaluations on October 8, 1971, and March 1, 1972; Commander Kiefaber had done likewise on September 1, 1972, March 1, 1973, and September 1, 1973; and, Commander Fitzwilliam had prepared the final performance evaluation on the appellant, which included his service to September 21, 1974. Trial counsel treated the request as one for witnesses and forwarded a memorandum, dated December 15, 1976, to the military judge recommending it be denied as to all witnesses.

In an Article 39(a)[1] session conducted on September 30, 1976, the military judge noted that the matter was premature as none of the witnesses had been contacted by the defense for the purpose of ascertaining what type of testimony they would submit if called to testify; the session was adjourned until a later date. The Article 39(a) session reconvened on January 17, 1977; defense counsel observed that he had been provided addresses for three of the officers by the Chief of Naval Personnel on December 27, 1976, but information had not been provided as to Captain Schwoefferman because someone had misspelled his name. However, "speed letters" were sent to the remaining three on December 29, "requesting synopsis of their testimony which they

---

1. Uniform Code of Military Justice, 10 U.S.C. § 839(a).

could offer . . . at trial." The letter mailed to Captain Ward was erroneously returned by the post office on January 4 on the basis that no zip code had been provided when, in fact, that information was included in the address shown on the envelope; the letter was immediately reposted. The letter mailed to Commander Kiefaber was returned on the basis that an incorrect address had been used; it was remailed at an unspecified time. On January 10, the defense was provided with Captain Schwoefferman's address, and a letter was mailed to him on that date. Defense attempts to contact Commander Fitzwilliam were more successful as that officer telephoned defense counsel on January 14 and indicated that he would give very favorable character testimony for the appellant.

Although the defense had not contacted three of the witnesses, the military judge observed "that the defense counsel, . . . has stated exactly the same factors concerning the prospective testimony" of the requested witnesses, *i. e.*, each witness involved had given the appellant a favorable performance evaluation during the period in question. Accordingly, the military judge held:

I deem it on their face that these prospective witnesses' testimony would be cumulative, and on that basis I feel that I would not be remiss in denying some of these witnesses.

The military judge did, however, grant appellant's request for Commander Fitzwilliam, the most recent commanding officer. The appellant entered a plea of guilty to the charged offense, and Commander Fitzwilliam presented favorable testimony during the sentencing portion of the trial. The appellant testified in his own behalf and asked the court members to impose a discharge in lieu of confinement. Defense counsel also made a similar request during his closing argument. Appellant now submits that the failure to produce the other three named witnesses requires reversal. We disagree.

■ Appellant asserts that the provision of paragraph 115a, Manual for Courts-Martial, United States, 1969 (Revised edition), which requires him to submit a request for witnesses through trial counsel, is inconsistent with Article 46, UCMJ, 10 U.S.C. § 846, which assures an accused "equal opportunity" with the Government in the procurement of witnesses. *See generally United States v. Williams*, 3 M.J. 239, 240 n. 2 (C.M.A.1977), and *United States v. Carpenter*, 1 M.J. 384, 386 n. 8 (C.M.A.1976).

Although trial·counsel treated appellant's initial communication as a request for witnesses, the document was, in substance, an attempt to elicit trial counsel's aid merely to locate the witnesses. Indeed, the record reflects that trial defense counsel voiced some complaint as to trial counsel's lack of cooperation in the matter.[2] Thus, the defense was attempting to use trial counsel's office for its benefit. Furthermore, as none of the alleged inequities interfered with appellant's request for witnesses or required improper advance disclosure of appellant's case, we need not consider the alleged inconsistency between paragraph 115a, Manual, *supra*, and Article 46. *United States v. Arias*, 3 M.J. 436 (C.M.A.1977).

We turn directly to the question of whether, at trial, the military judge abused his discretion by denying the request for the three witnesses. Appellant, citing *United States v. Carpenter, supra*, submits that as the witnesses would have presented favorable character evidence, the materiality of their testimony was demonstrated on the record. As these witnesses never responded to the defense inquiries, it is questionable whether this conclusion is supported by the record. *See generally United States v. Lucas*, 5 M.J. 167 (C.M.A.1978). The record does not reflect whether their silence was a deliberate refusal to respond or the result of the failure of the inquiries to reach each witness in time for a response to be received prior to trial. In any event,

---

2. While the defense alleged a lack of cooperation on the part of the Government and there were some difficulties encountered in the defense efforts to locate the witnesses, the addresses of the witnesses were ultimately provided by Naval authorities.

we assume, for the purpose of this appeal, that the witnesses would have given testimony consistent with the remarks set forth in their respective performance evaluations.

■ Favorable character evidence is a relevant factor in evaluating an appropriate sentence. *United States v. Manos*, 17 U.S. C.M.A. 10, 37 C.M.R. 274 (1967). However, we disagree with the appellant's contention that *Carpenter* requires reversal under the circumstances of the present case. Some language in *Carpenter* suggest that a requested witness must always be produced if such witness is material to the proceedings. Specifically, such an interpretation arose from the statement in *Carpenter* that "once materiality has been shown the Government must either produce the witness or abate the proceedings." *Id.* at 385–86. As the author judge in *Carpenter*, I acknowledged in my dissent in *United States v. Willis*, 3 M.J. 94, 96–100 (C.M.A.1977), the egregious nature of the language employed, and specifically rejected an interpretation of *Carpenter* as broad as that advanced by appellant. Materiality alone does not establish entitlement to the presence of the witness at trial. In *United States v. Williams, supra,* the Court held there is no right to physical attendance of a witness whose expected testimony would merely be cumulative to that of other witnesses.

■ As *Carpenter* established no new principle of law, reference to pre-existing cases is appropriate. In *United States v. Sweeney*, 14 U.S.C.M.A. 599, 605, 34 C.M.R. 379, 385 (1964), the Court stressed the fact that credibility was an important issue in the trial, and held the accused had been prejudiced because the personal appearance of two requested character witnesses "might well have tipped the balance" in his favor.[3] *Sweeney* also observed that, "Testimony on the merits differs widely from that offered in extenuation and mitigation." *Id.* at 606, 34 C.M.R. at 386. In

*United States v. Manos, supra,* the accused's request for the attendance of witnesses or, alternatively, to depose them for the sentencing portion of the trial was denied. Relying on *Sweeney*, the Court held that, under the facts presented, the denial of a sentencing witness was improper because:

> On the whole, therefore, on the showing made before us, we conclude it was an abuse of the convening authority's discretion not to have made the witnesses available or, at the least, provided for taking their depositions.

*United States v. Manos, supra* at 16, 37 C.M.R. at 280. Thus, the Court recognized that, under some circumstances, alternatives to the personal attendance of a requested witness can be appropriate.

■ The Court has never fashioned an inelastic rule to determine whether an accused is entitled to the personal attendance of a witness. It has, however, identified some relevant factors, such as: the issues involved in the case and the importance of the requested witness as to those issues; whether the witness is desired on the merits or the sentencing portion of the trial; whether the witness' testimony would be merely cumulative; and the availability of alternatives to the personal appearance of the witness, such as deposition, interrogatories or previous testimony. The foregoing is not meant to be exhaustive, nor can any one factor be identified as necessarily determinative of the issue. Rather, the matter must be left to the sound discretion of the person[4] ruling on the request for the personal attendance of a witness. If adverse to the accused, the ruling is subject to review and reversal if there has been an abuse of discretion. *See United States v. Sweeney, supra* at 603, 34 C.M.R. at 383. The guiding principle was expressed in *United States v. Manos, supra* at 15, 37 C.M.R. at 279, as follows:

---

3. *See also United States v. Jouan*, 3 M.J. 136 (C.M.A.1977).

4. Under military procedure the person would either be the convening authority if the request is submitted prior to trial or the trial judge if the request is renewed at trial. Paragraph 115 *a*, Manual for Courts-Martial, United States, 1969 (Revised edition); *see* Article 46, UCMJ, 10 U.S.C. § 846.

In *United States v. Sweeney*, supra, we pointed out that the right of an individual accused to the attendance of witnesses on the merits of the case was not absolute and that discretion was vested in the trial judge in the matter of subpoenaing witnesses at Government expense. But we likewise set out the duty "to assure to the greatest degree possible, . . . equal treatment for every litigant before the bar." *Coppedge v. United States*, 369 U.S. 438, 446, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). We did not there, nor do we here, authorize "*Carte blanche* authority for the issuance of subpoenas in all cases." *United States v. Sweeney*, supra [14 U.S.C.M.A.] at page 605 [34 C.M.R. at page 385]. We are, however, concerned with impressing on all concerned the undoubted right of the accused to secure the attendance of witnesses in his own behalf; the need for seriously considering the request; and taking necessary measures to comply therewith if such can be done without manifest injury to the service. That is what we meant in *Sweeney*, supra, in speaking of weighing the relative responsibilities of the parties against the equities of the situation.

In the present case, the appellant entered a plea of guilty and, therefore, the testimony would be material only to extenuation and mitigation of the sentence. *See United States v. Sweeney, supra.* Furthermore, the witnesses' testimony would have been substantially in accord with that of Commander Fitzwilliam, who testified as to appellant's job performance. Additionally, the performance evaluations which were prepared contemporaneously with the period under consideration were introduced into evidence; the credibility of the officers involved was not an issue. *See United States v. Sweeney, supra.* Accordingly, while Commander Fitzwilliam's testimony was limited to his period of command, the defense established that appellant's performance during this period was characteristic of his entire prior service. We conclude that, under the circumstances, the military judge did not abuse his discretion in denying the request. *See United States v. Lucas, supra.*

The decision of the United States Navy Court of Military Review is affirmed.

Chief Judge FLETCHER concurs in the result.

PERRY, Judge (concurring in the result):

I concur in the result. However, it cannot be said that the testimony of Commander Fitzwilliam was merely cumulative to that which might have been expected of the other former commanders, since they were the appellant's commanders at different time periods. *United States v. Williams*, 3 M.J. 239 (C.M.A.1977). While it cannot be said that performance ratings in the usual case are an acceptable substitute for live testimony of the raters, *id.*, I believe that under the peculiar facts of this case, it is legitimate to conclude that the uncontroverted character of the appellant's service during the entire period adequately was established for purposes of shedding light on what would be an appropriate sentence for the appellant. *See United States v. Lucas*, 5 M.J. 167, 172 (C.M.A.1978) (footnote omitted), where we held:

> Where evidence in the record of trial demonstrates beyond a reasonable doubt that the unadmitted testimony would not have tipped the balance in favor of the accused and the evidence of guilt is so strong as to show no reasonable possibility of prejudice to the appellant, reversal is not mandated.