UNITED STATES

v.

Raul FLORES, 452 21 2827, Lance Corporal (E–3), U. S. Marine Corps.

NCM 79 0481.

U. S. Navy Court of Military Review.

Sentence Adjudged 14 Nov. 1978.

Decided 26 June 1979.

LT. Vance J. Bettis, JAGC, USNR, Appellate Defense Counsel.

LCDR John C. Vinson, JAGC, USN, Appellate Government Counsel.

Before BAUM, Senior Judge, and MICHEL and GRANGER, JJ.

GRANGER, Judge:

Appellant, at his special court-martial bench trial, pleaded guilty to possession of prohibited weapons in violation of Navy Regulations. He pleaded not guilty to charges of larceny and burglary. Convicted of all charges, he was sentenced to confinement at hard labor for 6 months, forfeiture of $200 pay per month for 6 months, reduction to pay grade E–1, and separation with a bad-conduct discharge. The supervisory authority correctly concluded that the evidence would not support a burglary conviction but would support a finding of guilty of housebreaking. He reassessed the sentence and found it appropriate.

Appellant summarily urges that the military judge erred in denying a defense request for a witness, and that this error

requires setting aside the findings as to housebreaking and larceny. We reach a different conclusion and affirm the findings.

The evidence shows that Lance Corporal Crawford left his barracks at approximately 1930 on 15 June 1978. He returned at approximately 2300 the same evening. During the interim, someone entered Lance Corporal Crawford's cubicle, broke into his locked wall locker, and stole two cameras, a watch, and a pocket knife. The hasp of the locker had been twisted and broken off. Appellant occupied the cubicle directly across a 3-foot passageway from Lance Corporal Crawford's cubicle. When Lance Corporal Crawford returned, appellant was one of the few people in the barracks. Appellant indicated that he had been sleeping and knew nothing of the incident.

Two nights later, criminal investigators asked appellant for consent to search his wall locker, and he consented, but stated that if they were looking for the victim's property, appellant had pawned it. When appellant's locker was searched, however, most of the stolen items were found in his clothing. Appellant never admitted directly that he was the thief, but once, during interrogation as to why he took the property, he stated that he "liked to steal."

Appellant testified that he had showered and gone to sleep at about 2000 that evening. He awakened at about 2200, went to the head, then fell asleep again, only to be awakened at about 2300 by Lance Corporal Crawford. He testified that, although he is a light sleeper, he heard no noises from Lance Corporal Crawford's cubicle during the time Lance Corporal Crawford was gone. Appellant denied stating that he "liked to steal," and he had no recollection of stating he had pawned the victim's property. Appellant testified he was surprised when the stolen property was found in his locker.

The witness appellant requested was a Mr. Harris, formerly Lance Corporal Harris, who was in the barracks the night of the theft but subsequently had been discharged. Harris would testify that about 2200 on the night of the theft he noticed Lance Corporal Crawford's wall locker partially opened. There were three men in the squad bay, one of whom was appellant. Appellant was awake at the time. Harris went to the head and saw a white male bending over a trash can. Harris had seen this man before but did not know his name. The man was heavyset, had brown hair, drove a Honda, and lived in the adjacent barracks. When Harris entered the head, the man "left in a hurry." When Harris looked in the trash can, he saw a ring box and other large boxes.

The theory of the defense was that someone else had stolen Lance Corporal Crawford's property and surreptitiously placed it in appellant's clothing in appellant's wall locker. Trial defense counsel contended that Harris's testimony was important because it supported this theory, inasmuch as the stranger in the head could have been the thief or, alternatively, Harris, himself, could have committed these crimes.

 Under the facts of this case, where the accused contended someone else committed the charged offenses, testimony that a stranger was in the barracks shortly after a larceny was committed and that he was acting suspiciously and left quickly when his presence was detected must be considered material. Appellant was entitled to the testimony of this material witness. *United States v. Willis,* 3 M.J. 94 (C.M.A.1977); *United States v. Carpenter,* 1 M.J. 384 (C.M.A.1976). But non-production of a material witness does not always mandate reversal. Reversal is not required when the failure to produce the witness constituted harmless error beyond a reasonable doubt. *United States v. Lucas,* 5 M.J. 167 (C.M.A.1978); see *United States v. Brown,* 7 M.J. 815 (N.C.M.R.1979). That is the situation in the present case.

Appellant's defense was extremely improbable. In order to accept his story, it must first be believed that the stranger or someone else broke into this locker a few feet from where appellant—a light sleeper—was sleeping, and that the rending of metal and other noise engendered by the

thief did not awaken appellant. It must then be believed that the thief—for no apparent reason—secreted the stolen property in appellant's clothing inside appellant's locker, and that appellant did not detect this contraband before it was discovered by investigators 2 days after the theft. The witness Harris could not substantiate this story to any great extent. He could only testify that there was a stranger in the head, shortly after the offenses were committed, and that the stranger left quickly. Whatever the stranger was doing in the head, there is no evidence connecting it to these offenses.

In any event, the defense was not deprived of what little support could be gleaned from the missing witness's testimony, because the Government stipulated to the *facts. See United States v. Willis, supra* at 96, 98 (Cook, J. dissenting). Thus, the missing witness's account regarding the stranger was established as a verity, with no possibility that the court could disbelieve it. As the military judge reasoned at trial, "You can't do better than that . . . ." (R. 10).

Trial defense counsel also contended at trial that Harris's attendance was necessary in order to enable the defense to explore the possibility that Harris himself was the housebreaker and thief. But nothing in the record points to Harris as a suspect save his presence at the scene near the time the offenses were committed. This fact was before the court and was undisputed, and Harris's in-court admission of his presence would have been merely cumulative. Trial defense counsel acknowledged that he had amply discussed the case with Harris, by telephone, and he was unable to articulate any reason for suspecting Harris as the perpetrator of these offenses.

We conclude there is no reasonable possibility that appellant was prejudiced by the military judge's ruling on the witness request and, therefore, the failure to order the witness's appearance was harmless error beyond a reasonable doubt.

The findings and sentence as approved below are affirmed.

Senior Judge BAUM and Judge MICHEL concur.