UNITED STATES, Appellee

v

ROBERT E. MANOS, Seaman Apprentice,
U. S. Navy, Appellant

17 USCMA 10, 37 CMR 274

No. 19,779

May 5, 1967

*Lieutenant J. Arthur Bruno*, USNR, argued the cause for Appellant, Accused.

*Commander Walter F. Brown*, USN, argued the cause for Appellee, United States.

## Opinion of the Court*

FERGUSON, JUDGE:

Arraigned and tried before a special court-martial convened at Yokosuka, Japan, the accused was found guilty of three counts of absence without leave, in violation of Uniform Code of Military Justice, Article 86, 10 USC § 886, and two specifications of disobedience of a lawful general order, in violation of Code, supra, Article 92, 10 USC § 892. He was sentenced to bad-conduct discharge, forfeiture of $50.00 per month for six months, and confinement at hard labor for a like period. The convening authority reduced the period of forfeitures and confinement to three months and probationally suspended the bad-conduct discharge. The supervisory authority approved the modified sentence, and the board of review affirmed. We

granted accused's petition for review to consider the lawfulness of the general order he allegedly violated and the contention he was improperly deprived of witnesses in mitigation and extenuation by action of the convening authority.

I

The order involved in the case is COMNAVFORJAPAN Instruction 5800.29A, which provides, in its operative portion:

"Personnel of the Navy and Marine Corps who are under the age of twenty (20) years are forbidden to purchase, sell, receive, possess, or drink any alcoholic beverages (including beer), in Japan, whether within the limits of military bases or stations or in the Japanese community."

---

* Amended 17 USCMA 679.

11

In the separate counts alleging violation of this order, the accused was charged with drinking alcoholic beverages while under the age of twenty. He pleaded guilty to one specification and, as to the other, competent proof established his transgression. Before us, appellate defense counsel assert the order is illegal, as it broadly restricts an entirely personal right; has no relation to military duty; and, in effect, prohibits all drinking and related activities for servicemen under the age of twenty years while in Japan. In reply, the Government points out the order is based on a similar prohibition in Japanese law; the duty of American servicemen to respect that interdiction under Article XIV of the Administrative Agreement entered into with Japan under the provisions of Article VI of a Treaty of Mutual Cooperation and Security Between the United States of America and Japan, Regarding Facilities and Areas and the Status of United States Armed Forces in Japan, 11 UST 1652, TIAS 4510; and Navy Department directives requiring detailed alcohol beverage control resources to be promulgated, specifically with respect to minors. The defense nevertheless asserts that our decision in United States v Wilson, 12 USCMA 165, 30 CMR 165, is to the contrary. In addition, it contends Japanese law does not prohibit drinking by minors.

In the *Wilson* case, the accused, suspected of having committed crimes while under the influence of intoxicants, was specifically ordered by his commanding officer not to indulge in alcoholic beverages, without limitation as to time, place, or amount. In holding the order improper and its violation not punishable under the Code, we said, at page 166:

"... *In the absence of circumstances tending to show its connection to military needs,* an order which is so broadly restrictive of a private right of an individual is arbitrary and illegal." [Emphasis supplied.]

Unlike *Wilson*, supra, however, the order now before us is not unrestricted,

and it is shown to be directly connected with a military need. Here, rather than a specific order directed to an adult individual, with no basis other than fear his particular drinking might cause additional misconduct, there is a general regulation limited to those who, by local law, are prohibited from indulging themselves with alcohol. Thus, Japanese Special Law No. 20 of March 30, 1922, as amended by Special Law No. 223, 1947, to which reference was made in the COMNAVFORJAPAN general order, contrary to the defense contention, specifically prohibits drinking by persons under twenty years of age; sale or service of alcohol to such persons; and the confiscation of such beverages or implements for drinking purposes when possessed by these individuals. Moreover, Administrative Agreement provisions, also referenced in the regulation, placed a positive duty on members of our armed forces " 'to respect the law of Japan.' " In the past, problems and controversy over foreign prosecutions of our servicemen have arisen. See Wilson v Girard, 354 US 524, 1 L ed 2d 1544, 77 S Ct 1409 (1957), and Snee and Pye, Status of Forces Agreement and Criminal Jurisdiction, 1957, pages 129, *et seq.* Orders, therefore, which are designed to require compliance with local law on the pain of punishment under the provisions of the Uniform Code of Military Justice would seem closely "connected with the 'morale, discipline and usefulness' of the military service. United States v Martin, 1 USCMA 674, 676, 5 CMR 102; see also United States v Milldebrandt, 8 USCMA 635, 639, 25 CMR 139." United States v Wilson, supra, at page 166. As such, they would clearly be lawful directives.

Finally, we cannot escape the direct impact of orders such as this on military discipline and responsibility. It is one thing to prohibit an adult from engaging in conduct almost universally accepted as permissible in contemporary society. See United States v Wilson, supra. It is quite another to prohibit conduct which that same society nationally condemns. It is an order forbidding the latter sort of

12

behavior with which we deal here. Every State of the United States and the District of Columbia provides age limits, below which a minor may not avail himself of alcoholic beverages. Summary of State Laws and Regulations Relating to Distilled Spirits, 16th ed, Distilled Spirits Institute, Washington, D. C., 1961. To say that the Navy Department may not equally recognize the dangers inherent in minority imbiding and issue its "statute" in the form of a general order setting age limits for legal drinking in conformity with local law is to ignore its responsibility for the many youths found therein and its assumption in many respects of the role of *in loco parentis*. As it has done, so too may we recognize the dangers to discipline and duty inherent in drinking by those whom the law has regarded for centuries as, legally at least, too immature to wrestle with the problems involved in consumption of intoxicants. Perhaps there is some justice in the oft-heard teenage complaint that one old enough to fight for his country is old enough to drink. On the other hand, Mark Twain once remarked that, when he was fourteen, he thought his father a fool; when he became twenty-one, he was surprised at how much his parent had learned in seven years. In any event, the connection of the regulation with military purposes is well founded, and we conclude it was a lawful command.

## II

The second issue deals with the failure of the convening authority to secure the attendance of certain character witnesses in extenuation and mitigation or to permit their depositions to be taken. On February 24, 1966, defense counsel, a qualified lawyer, requested by letter to the trial counsel the attendance as character witnesses of three petty officers from accused's former ship, he having been transferred ashore. In addition, the attendance of a civilian in New York City was sought on a similar basis or, in the event his attendance was thought too expensive, it was further prayed that his deposition be taken.

The trial counsel forwarded the letter to the convening authority "as a matter under your cognizance." On March 1, 1966, the convening authority replied, denying the request as the witnesses were "a great distance from this command," and three were attached to a vessel "which is on operational commitments." Moreover, it was stated, as the evidence was to be used in mitigation and extenuation, the "value to be gained, weighed against the expense and time factors which would be incurred, is not sufficient to justify issuance of subpoena to any of the four." Finally, in light of the fact that counsel had allegedly sought a number of letters from individuals regarding accused's character; that the rules of evidence regarding proof of matters in mitigation and extenuation are relaxed; and counsel had had four weeks to obtain such evidence, "Further delay in order to obtain depositions is not justified." The court was ordered to convene on March 3, 1966. It did so.

At the trial, defense counsel did not advert to the convening authority's ruling, nor did he seek an order from the court for the attendance of the witnesses or taking of depositions. However, he introduced in evidence letters from one of the petty officers whose attendance he had sought and from a New York City police officer. The former attested to Manos' performance of duty and the latter to his satisfaction with a naval career and desire to remain in service.

Following the trial, defense counsel filed an appellate brief with the convening authority, in which he pointed out the "most important issue at the trial was whether he [Manos] should be retained in the Navy." On this question, he deemed character evidence to be crucial; pointed out accused was a transient when apprehended at Yokosuka; and that the petty officers most qualified to testify on his potential value to the service were deployed on his former vessel at the time of trial. Adverting to his attempts to contact them by letter prior to the trial and his subsequent unsuccessful request for their attendance as witnesses, counsel declared their testimony that Manos

13

was "a good sailor, obedient, and a good worker" would undoubtedly have led the court to hand down a less severe sentence. For these reasons, he sought remission of the bad-conduct discharge. In addition, he asked accused be given credit for his extensive pretrial confinement.

As noted above, the convening authority reduced the period of confinement and forfeitures imposed by one-half and suspended the bad-conduct discharge. On oral argument, we were informed it has since been remitted. The supervisory authority considered the allegation of denial of witnesses, but found any resulting prejudice purged by the convening authority's action on the sentence. The board of review likewise considered the question on its merits but failed to find the accused to have been prejudiced "with respect to the sentence as reduced below."

We are met at the outset with a veritable barrage of contentions by the Government. First, it is said ▉▉▉▉▉ ▉ that the Sixth Amendment, United States Constitution, right to have compulsory process for the accused to obtain witnesses in his favor does not apply in trials by court-martial. The short answer to this contention is found in United States v Sweeney, 14 USCMA 599, 34 CMR 379, at page 602, wherein we considered the refusal of a convening authority to make a character witness available:

> "Under the Sixth Amendment to the Constitution, one accused of crime is guaranteed the right to compel the attendance of witnesses. Who these witnesses shall be is a matter for the accused and his counsel. He may not be deprived of the right to summon to his aid witnesses who it is believed may offer proof to negate the Government's evidence or to support the defense."

It is next urged that the right to compulsory process under Code, supra, Article 46, 10 USC § 846, does not extend to the presentencing phase of the court-martial. The statute provides:

> "The trial counsel, the defense counsel, and the court-martial shall

have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe. Process issued in court-martial cases to compel witnesses to appear and testify and to compel the production of other evidence shall be similar to that which courts of the United States having criminal jurisdiction may lawfully issue and shall run to any part of the United States, or the Territories, Commonwealths, and possessions."

The Government argues that as process in military trials was designed by the statute to be similar to that in Federal courts, and as such courts do not formally hear witnesses on the issue of sentence, it was never intended by Congress to provide for issuance of process in courts-martial for witnesses in mitigation and extenuation. In the Federal courts, however, the trial judge imposes sentence on the basis of an *ex parte* probation report. The military procedure is entirely different. Under it, the fact finders or "military jury" also impose punishment in a post-finding proceedings. The rules for conducting those proceedings are found in paragraph 75, Manual for Courts-Martial, United States, 1951. While they provide the court "may relax the rules of evidence," they clearly envision the accused is also entitled to present witnesses who may testify in mitigation and extenuation. These rules have the force of law. United States v Smith, 13 USCMA 105, 32 CMR 105. They, as well as the military practice over many years, are entirely inconsistent with the contention that Code, supra, Article 46, is limited to compulsory process for witnesses on the merits of the case. The Government points to no authority in support of its contention regarding military trials, and we reject any such construction of the statute as ill-founded.

Next, we are asked to apply the doctrine of waiver, as the accused was represented by a qualified attorney who, though he requested the witnesses before the trial and complained of its denial to the convening

authority after sentence was imposed, did not raise the issue with the president at the court-martial. Normally, of course, a denial of subpoenas or a request to take depositions must be renewed at the trial in order to preserve the issue on appeal. See United States v Thornton, 8 USCMA 446, 24 CMR 256, and United States v Graalum, 19 CMR 667. Under the circumstances here presented, however, we are not inclined to invoke the doctrine of waiver. It appears that both the board of review and supervisory authority declined so to act and passed upon the issue now presented here. Moreover, the entire circumstances of the matter have been made known, and we see nothing to be gained here by charging the accused with the effect of a ruling which appears plainly erroneous. See United States v Stephen, 15 USCMA 314, 35 CMR 286. We turn, therefore, to the merits.

In United States v Sweeney, supra, although we did not there deal with evidence in extenuation and mitigation, we carefully pointed out the right of the accused to secure the attendance of character witnesses in his own behalf. We approved the procedure set forth in the Manual, supra, paragraph 115a. Such provides for the trial counsel to secure the attendance of witnesses for the defense, and if counsel differ as to the need for the witness, reference of the matter to the convening authority together with a statement setting out a synopsis of the desired testimony, full reasons for the personal appearance of the witness, and any other matters showing that his attendance is necessary to the ends of justice. On such basis, the convening authority will make his decision.

Here, defense counsel complied substantially with the foregoing. He asked for the appearance of four character witnesses, and the convening authority had no difficulty in determining they were intended to be used in mitigation and extenuation. In denying the attendance of three men, he acted on the basis of the absence of their ship on an operational commitment. As to the fourth, he acted on the basis of the time

and expense involved and refused to allow any depositions to be taken.

In United States v Sweeney, supra, we pointed out that the right of an individual accused to the attendance of witnesses on the merits of the case was not absolute and that discretion was vested in the trial judge in the matter of subpoenaing witnesses at Government expense. But we likewise set out the duty "to assure to the greatest degree possible, . . . equal treatment for every litigant before the bar." Coppedge v United States, 369 US 438, 446, 8 L ed 2d 21, 82 S Ct 917 (1962). We did not there, nor do we here, authorize "carte blanche authority for the issuance of subpoenas in all cases." United States v Sweeney, supra, at page 605. We are, however, concerned with impressing on all concerned the undoubted right of the accused to secure the attendance of witnesses in his own behalf; the need for seriously considering the request; and taking necessary measures to comply therewith if such can be done without manifest injury to the service. That is what we meant in Sweeney, supra, in speaking of weighing the relative responsibilities of the parties against the equities of the situation.

These considerations apply equally to witnesses in extenuation and mitigation. In many cases, as here, the Government can expect an easy conviction either through pleas of guilty or presence of incontestable proof. The accused's only hope in the trial is to mitigate his punishment by reference to his former good record and service. This may be done most effectively, as defense counsel noted, by the appearance and testimony of his superiors. The situation is aggravated from his standpoint when he is tried as a transient and is separated from those familiar with his background and abilities. That is what occurred here, and it epitomized the need for due attention to obtaining the presence of the witnesses he requested or taking their depositions.

Thus, while we have no argument with the unavailability of witnesses in

15

mitigation and extenuation based on the absence of their vessel on operational commitments or their essentiality to its performance of its primary mission, we suggest that this record shows little attention being given to the possibility of further delaying the proceedings or obtaining a better substitute for their testimony than that afforded by the single letter which defense counsel was able to produce. From the papers presented to us on appeal, it appears he clearly exercised due diligence, sought to ascertain the extent of the witnesses' knowledge, was willing to compromise with the Government as to the manner in which it would be presented, and believed the presence of the accused's former superiors and the witness from New York outweighed the need for immediate trial. On the whole, therefore, on the showing made before us, we conclude it was an abuse of the convening authority's discretion not to have made the witnesses available or, at the least, provided for taking their depositions. United States v Sweeney, supra.

Left for determination, however, is the question of prejudice. As we have noted above, this issue was presented at every appellate level below. Trial defense counsel in his post-trial brief asserted his conclusion that the absence of the witnesses in extenuation and mitigation went to whether a punitive discharge would have been adjudged. The convening authority not only suspended that portion of the sentence, but also cut the adjudged confinement and forfeitures in half. The sentence was likewise reassessed in light of the absence of the witnesses by the supervisory authority and the board of review. We were informed on oral argument that the bad-conduct discharge has now been remitted. Such action is equivalent to its disapproval. United States v Cieslak, 13 USCMA 216, 32 CMR 216. In light of such action, we necessarily conclude that any prejudice involved has been removed.

The decision of the board of review is affirmed.

Judge KILDAY concurs.

QUINN, Chief Judge (concurring in part and dissenting in part):

I disagree with the majority's conclusion that the convening authority abused his discretion in denying the defense request for certain witnesses. The convening authority specifically observed the request did not indicate that any of the desired testimony was "relevant regarding the innocence or guilt of the accused." As to the value of the testimony for the purpose of sentence, the letter-ruling referred to several factors which the convening authority apparently considered sufficient to justify denial of the defense request.

First, the convening authority pointed out that the three military witnesses were aboard a vessel "on operational commitments." The manifest need to retain them on the ship contrasts sharply with the undefined and uncertain value of their testimony to the accused at trial. The accused merely described these persons as "character" witnesses; he gave no hint of the nature and length of his association with them, or what favorable traits of his character they were expected to testify to. The fourth witness was a civilian. He was located a great distance from the place of trial; and the nature and extent of his association with the accused were also not disclosed. Secondly, the convening authority noted that defense counsel had "already requested a number of letters" from various persons "regarding character evidence." There was no indication that the requested witnesses would give different or more relevant "character" testimony than was already available to the defense. It is certainly inferable from the convening authority's remarks, which include a reference to the general relaxation of the rules of evidence during the sentence procedure, that he believed the prospective testimony might be merely cumulative. Thirdly, the convening authority remarked that defense counsel had been in the case for almost four weeks; he considered this time "sufficient" for the purpose of assembling character evidence for mitigation purposes. For that reason, he concluded "[f]urther

16

delay" for procuring "formal depositions" was not justified. In my opinion, these circumstances fully support his denial of the defense request.

I also disagree with the majority as to the effect of the accused's failure to renew the motion at trial. Developments in the defense case between the time of the convening authority's ruling and the trial may materially have changed the necessity for the witnesses' testimony. See United States v Mitchell, 15 USCMA 516, 520, 36 CMR 14; United States v Oliver, 14 USCMA 192, 33 CMR 404, footnote 1. The failure to renew the motion at trial reasonably implies that the accused and his lawyer concluded the prospective testimony was, in fact, unimportant to the accused's case.

In other respects, I agree with the principal opinion, and join in the affirmance of the decision of the board of review.