UNITED STATES

v.

**Brian D. GIERMEK, Electronics Technician Communication Third Class U. S. Coast Guard.**

**CGCM 9950.**
**Docket No. 808.**

U. S. Coast Guard Court of Military Review.

Sentence Adjudged 19 Aug. 1976.

Decided 30 Aug. 1977.

Trial Counsel: LT Michael J. Perrone, USCGR.

Defense Counsel: LT Michael K. Bell, USCG.

Individual Military Counsel: LT Steven J. Delaney, USCG.

Appellate Defense Counsel: LCDR Edward B. Peel, USCGR.

For the United States: LT Malcolm J. Williams, Jr., USCGR.

## OPINION OF THE COURT

LYNCH, Judge:

■ The defendant was charged with and tried by general court-martial on one specification under Article 92, UCMJ, 10 U.S.C. § 892 (Charge I), alleging a violation of Coast Guard regulations by possession of cocaine and one specification under Article 81, UCMJ 10 U.S.C. § 881 (Charge II), alleging conspiracy to possess cocaine in violation of Coast Guard regulations. He was found not guilty of the specification under Charge I and guilty of the conspiracy specification under Charge II. The failure of the court to enter a finding as to each charge is harmless error in view of the entry of findings as to the single specification under each charge. *U. S. v. Hathaway*, 1 C.M.R. 776 (N.B.R.1951); *U. S. v. Graham*, 36 C.M.R. 945 (A.F.B.R.1966).

■ The defendant was arraigned on 19 July 1976 at a session of the trial held pursuant to Article 39(a) UCMJ. The taking of the pleas, however, was postponed and the case continued until 16 August 1976 because of the absence due to illness of the individual military counsel. A one year extension of the defendant's enlistment expired on 8 August 1976, during the time the case was continued, and the appellate defense counsel has argued that the Coast Guard lost jurisdiction because of a failure to obtain specific approval from the Commandant to retain the defendant beyond his termination date as required by Chapter 12 of the Personnel Manual (CG–300). We find this argument without merit.

■ Appellate defense has argued that the specification does not allege an offense since the Administrator, Drug Enforcement Administration, has not republished the Schedules of Controlled Substances annually as required by Section 202(a) of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 812(a). This issue was disposed of in this court's decision in *U. S. v. Wiles*, 3 M.J. 577 (C.G.C. M.R.1977), and we see no persuasive reason for overturning that decision.

The defendant pursuant to Article 38(b), requested that he be represented by individual military counsel, and the initial convening order of 8 July 1976 was amended on 13 July 1976 to appoint the individual military counsel requested. As noted previously, a session of the trial pursuant to Article 39(a), UCMJ, was held on 19 July 1976 during which it was noted that the individual military counsel was absent due to illness. The associate counsel requested a continuance until 16 August 1976 to allow the individual military counsel to recover from his illness and to have time to prepare the case for trial. In response to the trial counsel's request that material and necessary witnesses attached to the CGC GLACIER be identified in view of her deployment on or about 26 July 1977, associate defense counsel stated "the defense at this time can state that we do not plan on calling any witnesses from the GLACIER which we consider are necessary and material to this case." There is no indication in the record that this commitment was made after consultation with, or with the approval of, the individual military counsel.

On 13 August 1976 the individual military counsel submitted a request to the trial counsel pursuant to paragraph 115 MCM, 1969 (Revised), requesting the personal appearance of a military witness (Defense Exhibit B). This request set forth the following:

(a) ETC Jack E. Benton 374 36 0246, USCG. The witness is expected to testify about the credibility of ET2 WHIPPLE and on the good character of the accused. The personal appearance of this witness is necessary to allow full development of these matters, which are essential elements in the defense of this case. It is

also necessary to offset the fact that many of the government witnesses will be appearing personally. To allow the government to have personal appearances by their witnesses while forcing the defense to rely on less than personal appearances by witnesses crucial to the defense would be inequitable and deny the defendant of his right to a fair trial. Chief BENTON was formerly the direct supervisor of both ET2 WHIPPLE and the accused.

The convening authority's undated response in denying the request stated:

a. ETC Jack E. BENTON. No representations as to what ETC BENTON would state when put under oath were set forth in reference (a). Reference (a) only states that ETC BENTON is expected to testify about the credibility of WHIPPLE and the good character of the accused. To bring a witness from the Ninth Coast Guard District to the Eleventh Coast Guard District, based on these representations alone would be unjust to the Government and United States taxpayers. (Defense Exhibit C)

The record reveals that this response was signed on 16 August 1976, the morning the trial resumed (R.65). The individual military counsel renewed his request for the appearance of Chief Benton before the military judge and argued that the purpose of this witness's testimony would go directly to the issue of the credibility and reputation for veracity of Petty Officer Whipple, the government's sole witness concerning the facts and circumstances surrounding the commission of the alleged offenses. It should be noted that Petty Officer Whipple was a named co-conspirator and had been granted testimonial immunity. Chief Benton was Whipple's direct supervisor. The defense argued that Chief Benton, as the defendant's supervisor, would also testify to the good character and proficiency of the defendant as evidence in extenuation and mitigation if necessary. The military judge denied the defense request on the basis that they had not complied with the requirements of the law in showing relevancy and need for this witness. The military judge

however, stated that he would reconsider the motion "at such time as the defense produces for me in writing, a thorough summarization or synopsis of the testimony that is expected.  .  .  ."

In compliance with the military judge's ruling the individual military counsel submitted to the military judge Appellate Exhibit III which stated, in part:

a. ETC Jack E. BENTON 374 36 0246, USCG. The witness is expected to testify that he was the ETC on board the CGC GLACIER from June 1974 to June 1976. That he was in charge of the electronics spaces. That ET3 Brian GIERMEK worked for him during that two year period. That he was aware that GIERMEK, during that period, was taking a Cleveland Institute course for his own educational benefit. That ET3 GIERMEK was in charge of the electronic equipment in the radio room and "held the radio room together" and trained new personnel. That ET3 GIERMEK was the electronics knowledge for radio central on board the GLACIER and needed little or no supervision in the performance of his electronics duties in regards to radio central. That during that period of time the radio central electronics gear was kept up well. That ET3 GIERMEK was not a disciplinary problem. That he would not object to have ET3 GIERMEK work for him in the future. Chief BENTON is also expected to testify concerning the truth and veracity of ET2 WHIPPLE. That WHIPPLE also worked for Chief BENTON on board the GLACIER. That is aware of WHIPPLE's reputation for truth and veracity on board the GLACIER community, and that in his opinion, WHIPPLE would say anything to get what WHIPPLE wanted. That WHIPPLE, in his opinion was shifty and was to be distrusted.

The military judge's response to the individual counsel's renewed request for Chief Benton following the submission of Appellate Exhibit III was:

In respect to the request for ETC BENTON, I am now addressing Lieutenant

DELANEY, Individual Military Counsel, and hence, attorney in charge of the presentation of the defense in this case. I am very concerned with the request for the production of ETC Jack E. BENTON from the Ninth Coast Guard District as a witness in this case, and especially with the timing of the submission of this request. I am so concerned, in fact, that I ask you now to consider, and remember the three oaths of office you have taken. The first, as a commissioned officer in the U. S. Coast Guard; the second, as an attorney at law, and the third as a defense counsel before this court. I ask you also to consider the American Bar Association Code of Professional Responsibility, and particularly the matters contained in Rules EC 2–5, and DR 7–102(a)[A](1), and DR 106(a) and (c)(5) and (7), which I will furnish you a copy shortly. Then, I ask you to reconsider your request made for the personal appearance of ETC BENTON as a witness in this trial. And I ask you to certify before this court that you have consulted with the trial counsel fully, concerning this request, that upon reconsideration and reflection the request is made with complete good faith and a clear conscience on your part, that to the best of your knowledge and ability, this action is required in the exercise of your duties as an officer of this court, and that a substitute course of action cannot be satisfactory for the discharge of your ethical obligations to your client.

Following this, the military judge granted a brief recess for the individual military counsel to consider the matters he addressed. A little less than an hour later, the Article 39(a) session reconvened at which time the following dialogue took place:

MJ: Mr. DELANEY, have you reached a decision?

IMC: Yes, Sir. Trial counsel and the detailed defense counsel and I have all spent some time discussing Chief BENTON's testimony on the telephone with him, and those things which he would say, we think we can work out a stipulation to at a later time. And therefore, in light of that at this time we will with-

draw the motion and the stipulation will suffice at some later time, Sir.

The issue thus raised is whether the individual military counsel's withdrawal of his request for Chief Benton was freely and voluntarily made or the result of coercion by the military judge. It is our opinion that the latter is the case, and we are therefore confronted with the question as to whether the military judge's denial of the defense request to produce Chief Benton as a live witness was an abuse of discretion; and if so, its effect.

The Court of Military Appeals has recently decided a number of cases involving the question of a defendant's right to live witnesses. *U. S. v. Iturralde-Aponte*, 1 M.J. 196 (1975); *U. S. v. Carpenter*, 1 M.J. 384 (1976); *U. S. v. Willis*, 3 M.J. 94 (C.M. A.1977); *U. S. v. Jouan*, 3 M.J. 136 (C.M.A. 1977), and *U. S. v. Williams*, 3 M.J. 239 (C.M.A.1977). These recent decisions are modifications of the Court's earlier decision in *U. S. v. Sweeney*, 14 U.S.C.M.A. 599, 34 C.M.R. 379 (1964), which held that the government must produce a witness at trial if the witness's testimony went to "the core of the defense" on the merits. The Court extended the principle of *Sweeney* to the sentencing phase of the trial in *U. S. v. Manos*, 17 U.S.C.M.A. 10, 37 C.M.R. 274 (1967).

In its most recent decision, *U. S. v. Williams*, supra, the Court of Military Appeals set forth the standard to be applied:

. . . if the testimony of a given witness is material, the live presence of the witness must be furnished or the proceedings abated, *U. S. v. Willis*, supra; *U. S. v. Carpenter*, supra, unless, in the sound discretion of the trial judge, the testimony of that witness would be merely cumulative to the testimony of other defense witnesses.

■ The questions thus become whether the testimony of Chief Benton, as outlined by the defense in Defense Exhibit A and Appellate Exhibit III was relevant and material and whether it was merely cumulative.

The record reveals that Petty Officer Whipple was an alleged co-conspirator; an accomplice to the defendant's possession of cocaine; had been granted immunity to testify; and was the sole prosecution witness concerning the facts and circumstances surrounding the defendant's possession of cocaine. In view of these facts, the credibility of Petty Officer Whipple was, in the words of *Sweeney*, supra, the "core of the defense" on the merits of the case. Chief Benton's testimony, as Whipple's supervisor, concerning Whipple's reputation for truth and veracity and his opinion of Whipple's credibility (Paras. 153(b) and 138(f)(1) MCM) were clearly material and relevant, and therefore the first part of the standard has been met.

The next question is whether or not Benton's testimony, although material and relevant, would have been "merely cumulative to the testimony of other defense witnesses." As noted previously, during the Article 39(a) session held on 19 July 1976, without the presence of the individual military counsel, the associate defense counsel stated that no witnesses from the GLACIER would be called by the defense. In urging the military judge to grant his Motion to Produce Chief Benton as a witness the individual military counsel stated:

> Originally, when a continuance was requested in this case a month ago, it was with the understanding that the defense would not be requiring individuals from the GLACIER to be called since the GLACIER was then deploying, and it was at that time with the understanding that Chief BENTON had been transferred from the GLACIER, and at that time we had reserved the possibility that we might call him in the extenuation and mitigation end and on the merits.

It is therefore obvious that the defense, rather than request live witnesses from the crew of the deploying GLACIER, was relying on Chief Benton to provide the testimony pertaining to Whipple's credibility. No other defense witnesses were sought or called on the issue of Whipple's character for truth and veracity. The record is thus clear that Chief Benton's testimony would not be cumulative.

In view of the above, we find that the defendant was denied due process by the military judge's abuse of discretion in not directing the government to provide Chief Benton as a live witness, or abate the proceedings.

In view of our disposition of this issue, other issues concerning the adequacy of the evidence to support the findings, and the holding of a session of the trial in the absence of the appointed individual military counsel are rendered moot.

The finding of guilty of the specification under Charge II is set aside and the sentence is disapproved. A rehearing may be held.

Chief Judge ROSENWASSER concurs.

Judge MAGUIRE filed concurring opinion.

Judges BURGESS and ALCANTARA did not participate in the decision in this case.

MAGUIRE, Judge, concurring:

I concur with the majority that reversible error occurred but cannot agree that a rehearing may be held. The charges should be dismissed because there was no offense alleged (see dissenting opinion in *United States v. Wiles*, 3 M.J. 577, C.G.C.M.R.1977, and *United States v. Torrence*, 3 M.J. 804, C.G.C.M.R.1977), and because, by virtue of non-compliance with the requirements of subsection 12–B–11(i) of the Coast Guard Personnel Manual (CG–207), the accused was discharged from the Coast Guard by operation of law on the scheduled date of expiration of his enlistment and was not amenable to trial by court-martial.