**UNITED STATES**

**v.**

**Deyampert L. KERSH, 325 64 4727, Seaman Apprentice (E–2), U.S. Navy.**

**NMCM No. 91 2144.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 20 March 1991.

Decided 28 Feb. 1992.

9. Customarily total forfeitures are not awarded     for a period of time. R.C.M. 1003(b)(2).

Maj G.S. Warner, USMC, Appellate Defense Counsel.

LtCol Eugene P. Whetzel, USMC, Appellate Defense Counsel.

LT K.S. Anderson, JAGC, USNR, Appellate Government Counsel.

Before JONES, Senior Judge, and REED and LAWRENCE, JJ.

REED, Judge:

We have examined the record of trial, the assignments of error,[1] and the Government's reply thereto.[2]

Appellant was tried on 20 March 1991 by a special court-martial, military judge alone. Pursuant to his pleas, he was convicted of one specification of resisting apprehension (Charge I), one specification of assault (Charge II), and one specification of carrying a concealed weapon (Charge III), in violation of the Uniform Code of Military Justice (UCMJ), Articles 95, 128, and 134, 10 U.S.C. §§ 895, 928, and 934, respectively. He was sentenced to be confined for 100 days, to forfeit $500.00 pay per month for 3 months, to be reduced in rate to paygrade E-1, and to be discharged from the naval service with a bad conduct discharge.

## I

In appellant's sixth assignment of error, he argues that it was error for the

---

1. I. APPELLANT'S PLEAS OF GUILTY TO CHARGE I AND ITS SPECIFICATION ARE IMPROVIDENT.
II. APPELLANT'S PLEAS OF GUILTY TO CHARGE II AND ITS SINGLE SPECIFICATION ARE IMPROVIDENT.
III. APPELLANT'S PLEAS OF GUILTY TO CHARGE III AND ITS SPECIFICATION ARE IMPROVIDENT.
IV. THE CONVENING AUTHORITY ERRED IN TAKING ACTION HEREIN WHERE THE RECORD OF TRIAL AND ALLIED PAPERS IS INCOMPLETE.
V. THE MILITARY JUDGE ERRED BY ADMITTING EVIDENCE OF A PRIOR SUMMARY COURT–MARTIAL, OVER APPELLANT'S OBJECTION, WITHOUT PROOF THAT APPELLANT WAS ACCORDED HIS RIGHT TO REFUSE SUCH A TRIAL.
VI. WHERE APPELLANT WAS IN CUSTODY ON 29 DECEMBER 1990, IT WAS ERROR FOR THE MILITARY JUDGE TO FAIL TO CONSIDER PRETRIAL CONFINEMENT TO HAVE COMMENCED ON SUCH DATE. [CITATION OMITTED]

2. We note at the outset that appellant's fourth assignment of error has now been mooted by the affidavit attached to Government's Motion To Attach Document. In his affidavit, the command judge advocate explains that a change of personnel resulted in the relieving Legalman First Class using a prior court-martial order as a guide and his failure to delete that portion relating to the earlier case. The affidavit does support our finding that the record is complete, the error within the court-martial order occurring when a portion of an action involving another unconnected court-martial was improperly incorporated into the convening authority's action in the case now before us. We remind the command judge advocate that *he* is responsible for the quality and accuracy of his office's work product.

The Government concedes the validity of the fifth assignment of error. *See United States v. Booker*, 5 M.J. 238 (C.M.A.1977). We agree and will rectify this error in our decretal paragraph.

military judge to fail to consider pretrial confinement to have commenced on the date appellant was apprehended, even though he was not placed into confinement until the following day. He cites *United States v. Spencer*, 32 M.J. 841 (N.M.C.M.R. 1991) as authority that such day of apprehension must be credited against confinement adjudged at trial. We disagree. *Spencer* is derived from *United States v. Allen*, 17 M.J. 126 (C.M.A.1984). *Allen* stands for the proposition that an accused is entitled to sentence credit for time spent in *pretrial confinement*. *Spencer* builds on *Allen* and holds that an accused, who serves one or more intermittent periods of *pretrial confinement* but is not held in confinement on the date of sentencing, is entitled to sentencing credit for each and every day or partial day spent in pretrial confinement. Neither discusses, however, whether credit should be given for the time an accused is restrained as a result of an apprehension but is not confined on that day.

We note that the requirement of day-for-day credit for pretrial confinement arose from The Bail Reform Act of 1966 as made applicable to the military services by Department of Defense Instruction 1325.4. *See Spencer* at 842. The Bail Reform Act, 18 U.S.C. § 3568,[3] required the Attorney General to credit sentenced prisoners with time served *in custody* because of any offense that resulted in the punishment. The DOD instruction provided that procedures for computing sentences, as employed by the Department of Justice, apply to the armed forces.

We have been unable to find any military case law or service regulation that interprets the word "custody" as found in the statute and made applicable to the military by regulation, and appellate counsel have cited no authority to us. However, a perusal of federal authorities in this area is enlightening. The cases we have examined indicate that the federal authorities interpret "custody" to mean "actual custodial incarceration," *Ortega v. United States*, 510 F.2d 412, 413 (10th Cir.1975), and not just "severe restraint on individual liberty," *United States v. Hoskow*, 460 F.Supp. 929, 931 (E.D.Mich.1978). We agree with the U.S. District Court for the District of South Carolina that case law indicates that days spent in custody means "days spent in jail." *See Hogan v. United States*, 383 F.Supp. 850, 852 (D.S.C.1974). To hold otherwise would mean that anytime an accused is placed in some sort of restricted status whereby his movements are curtailed, an event occurring regularly in the military, the government would have to later credit an accused as if he had been placed in pretrial confinement. Often an accused will be apprehended, interviewed, and released, even though judicial proceedings may ultimately result. Absent an accused being placed in a pretrial restricted status tantamount to confinement, *see United States v. Mason*, 19 M.J. 274 (C.M.A.1985), credit against an adjudged sentence to confinement will not be granted. There is no evidence before us to show that the restraint of appellant prior to his actual incarceration in the confinement facility was tantamount to confinement. Accordingly, we find appellant's sixth assignment of error to be without merit.

## II

The remaining assignments of error (I, II, and III) center on the adequacy of the providence inquiry into appellant's pleas of guilty. All of the offenses arose from a single incident which occurred on the evening of 29 December 1990. Appellant indicated during the providence inquiry that he went to the Enlisted Men's Club at Naval Station Philadelphia around 2000 with a group of people which included a female friend of his. At the club there were two policemen—Jennings, a petty officer dressed in camouflage utilities, and Stevens, a Department of Defense policeman dressed in a policeman's uniform. The providence inquiry of the accused established that these men were performing the

---

**3.** Title 18, U.S.C. § 3568 reads in part: "The Attorney General shall give any ... person [sentenced to imprisonment] credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed."

duties of policemen on the night in question.

ACCUSED: Well, sir, I was with this girl, and when I came out from the club area, I was going through the exit, and she was talking to the police [Stevens and Jennings]. They were questioning her, so I asked him [Stevens] what was wrong. He asked me who I was, and asked for my I.D. card. And I asked him why he wanted my I.D. card. He got an attitude (sic) about it and asked for my "blank" I.D., and I said I wasn't giving it to him, and I started to leave, and—

. . . . .

Stevens grabbed my arm and we got to wrestling around. Then Petty Officer Jennings jumped on my back and got me to the ground. Petty Officer Jennings had me in a head lock and he was kind of choking me, so I bit him so he could (sic) let me go. Then they just put the handcuffs on me and arrested me.

. . . . .

He [Stevens] was trying to hold me; he grabbed me. I just fought back.

MJ: Do you feel that you were resisting his apprehension?

ACCUSED: Yes, sir.

MJ: Do you think that he was permitted under the circumstances to apprehend you?

ACCUSED: Yes, sir.

MJ: Do you think he was a person authorized to do that?

ACCUSED: Yes, sir.

. . . . .

MJ: Do you think that both of them [Stevens and Jennings] had authority to apprehend you?

ACCUSED: Yes, sir.

MJ: And you said that Jennings jumped on you and got you in a head lock?

ACCUSED: Yes, sir.

MJ: And did you bite him?

ACCUSED: Yes, sir.

. . . . .

MJ: And do you feel that your biting him was done with unlawful force or violence?

ACCUSED: Yes, sir.

MJ: Do you think that you were authorized to bite him under the circumstances? Do you think that was the right thing to do?

ACCUSED: No, Sir.

Record at 15–18.

We believe that this inquiry satisfactorily establishes appellant's guilt to Charge I (resisting apprehension) and Charge II (assault). As appellant admits, these two men were police officers acting in that capacity on the night in question. When appellant approached the policeman who was questioning appellant's female friend, he was asked to produce his identification card. These policemen were authorized to ask for such a card since it was apparent that appellant was this woman's escort and responsible for her. He elected not to comply with this order. Appellate defense counsel would have us believe that since appellant, "prior to the incident in question, committed no offense, there was no probable cause to detain him ... [and] [a]s a private citizen, he was thus free to leave without responding to Jennings' request [to produce his identification card]." Such is not the law as we view it in the military. Although there is no information elicited during the providence inquiry as to why appellant's friend was being questioned, we may assume, absent evidence to the contrary, that it was for a lawful purpose. Accordingly, we also conclude that when these policemen were approached by appellant, arguably interfering with them, they could have ordered him away or questioned him as to his interest in their investigation. Since he approached them, the policemen could conclude that he had some interest in the matter they were pursuing and their instruction to him to produce his identification card is clearly lawful. *See United States v. McLaughlin,* 14 M.J. 908 (N.M.C.M.R.1982), *pet. denied,* 15 M.J. 405 (C.M.A.1983).

The obligation of a service member to produce his identification card in response to a reasonable request that he do so is analogous to an "independent duty to account" to proper authority as to who he is.

*See United States v. Lloyd,* 10 M.J. 172 (C.M.A.1981). Simply stated, a request by a superior military authority (including a military policeman in the execution of his duties) to a servicemember to identify himself and produce his identification card is eminently reasonable, and the maintenance of good order and discipline and military duty require quick compliance. The failure to do so constitutes a disobedience of a lawful order. *See United States v. Earle,* 12 M.J. 795 (N.M.C.M.R.1981).[4] Such disobedience clearly authorized appellant to be apprehended.[5] Rule for Courts–Martial (R.C.M.) 302(c), Manual for Courts–Martial, United States, 1984 (MCM).[6] The policeman present was authorized to apprehend pursuant to the Manual for Courts–Martial. *See* R.C.M. 302(b).[7] He had probable cause to believe an offense had been committed since appellant disobeyed his order and turned away. Apprehension of the appellant was thus authorized.

Apprehension is the taking of a person into custody. Part IV, para. 19c(1)(a), MCM, 1984. Appellant indicated that one of the policemen attempted to apprehend him by "trying to hold me." In order to resist apprehension, the "resistance must be active, such as assaulting the person attempting to apprehend or flight." Part

IV, para. 19c(1)(c), MCM, 1984. Appellant indicated that he resisted the apprehension by fighting with the policemen when one policeman grabbed his arm to keep him from leaving and after he refused the order to produce his identification card. The facts elicited from appellant by the military judge clearly establish his guilt to Charge I and its specification of resisting apprehension.

■ Charge II and its specification allege an assault by appellant on Jennings, one of the policemen. Appellant admitted that the biting by him, i.e. the assault, "was done with unlawful force or violence." This assault occurred while appellant was resisting apprehension as discussed above. Even when a person may not be convicted of resisting apprehension because the attempted apprehension is illegal, he may still be convicted of other offenses, such as assault, depending on all the circumstances. *Id.* However, an attempted apprehension by a person authorized to apprehend is presumed to be legal in the absence of evidence to the contrary. Part IV, para. 19c(1)(e), MCM, 1984. As discussed earlier, this attempt to take appellant into custody was lawful. Appellant's attempt to "defend" himself, that is,

---

**4.** If the request is made for an improper purpose, *e.g.,* if it does not relate to a military duty, is done strictly to harass a serviceman, or if the person making the request has abandoned his rank or position of authority, such an order could be ignored. *See generally United States v. Smith,* 1 M.J. 156 (C.M.A.1975); *United States v. Raneri,* 22 C.M.R. 694 (N.B.R.1956); *United States v. Richardson,* 7 M.J. 320 (C.M.A.1979). However, "[a]n order requiring the performance of a military duty or act may be inferred to be lawful and it is disobeyed at the peril of the subordinate." Part IV, para. 14c(2)(a)(i), MCM, 1984. The term "military duty" includes not only those activities usually thought of as military duties, but also includes all activities which are reasonably necessary to safeguard or promote the morale, discipline, and usefulness of members of a command. *United States v. Manos,* 17 U.S.C.M.A. 10, 37 C.M.R. 274 (1967); *United States v. Martin,* 1 U.S.C.M.A. 674, 5 C.M.R. 102 (1952).

**5.** Personal identification is not protected by either the Fifth Amendment to the U.S. Constitution or Article 31(b), UCMJ, 10 U.S.C. § 831(b). *See Earle* at 797.

**6.** Probable cause to apprehend exists when there are reasonable grounds to believe that an offense has been or is being committed and the person to be apprehended committed or is committing it. R.C.M. 302(c).

**7.** R.C.M. 302 provides in part:

(b) *Who may apprehend.* The following officials may apprehend any person subject to trial by court-martial:

(1) *Military law enforcement officials.* Security police, military police, master at arms personnel, members of the shore patrol, and persons designated by proper authorities to perform military criminal investigative, guard, or police duties, whether subject to the code or not, when, in each of the foregoing instances, the official making the apprehension is in the execution of law enforcement duties;

(2) *Commissioned, warrant, petty, and noncommissioned officers.* All commissioned, warrant, petty and noncommissioned officers on active duty or inactive duty training;

. . . .

to keep himself from being taken into apprehension is no defense to the assault. The military judge recognized this as did appellant during the providence inquiry.

A "mere possibility of conflict between a guilty plea and the accused's statements" is an insufficient basis for rejecting a guilty plea, *United States v. Logan*, 22 U.S.C.M.A. 349, 47 C.M.R. 1 (1973); in order for pleas to be set aside on appeal as improvident, the record must contain some evidence in "substantial conflict" with the guilty pleas. *United States v. Stewart*, 29 M.J. 92, 93 (C.M.A.1989), citing *United States v. Hebert*, 1 M.J. 84, 86 (C.M.A. 1975). The providence inquiry need not establish the nonexistence of every conceivable defense in the absence of evidence that is in substantial conflict with the guilty plea.

Appellant's second assignment of error is without merit. The facts elicited from the appellant clearly establish his guilt to the assault.

Appellant alleges, in his third assignment of error, that the providence inquiry fails to establish his guilt to carrying a concealed weapon. Again, we disagree. The military judge clearly advised appellant that "an object or weapon is dangerous if it is specifically designed for the purpose of doing grievous bodily harm. A weapon is concealed when it is carried by a person and intentionally covered or kept from sight." Record at 13. Appellant indicated he understood this explanation and that the weapon he was carrying on the night in question and its concealment clearly met these definitions. Appellant indicated that it was a knife designed to be carried in a boot, was double-edged, could not be closed, and was not used in the execution of any of his duties. It is hard to believe what additional facts the military judge could have elicited to further substantiate the charge. The third assignment of error is without merit.

As noted, the military judge improperly received into evidence a summary court-martial of the accused. However, in light of the seriousness of the current charges, as well as appellant's previous disciplinary history, we are convinced that this error had no effect on the sentencing authority and that the sentence is appropriate for those offenses for which the accused stands convicted. *See United States v. Peoples*, 29 M.J. 426 (C.M.A.1990) and *United States v. Sales*, 22 M.J. 305 (1986). Accordingly, the findings and sentence, as approved on review below, are affirmed.

Senior Judge JONES and Judge LAWRENCE concur.