# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

### Colby C. BAILEY
### Seaman (E-3), U.S. Coast Guard

### CGCMG 0330
### Docket No. 1428

### 4 January 2017

General Court-Martial convened by Commander, Seventh Coast Guard District.  Arraignment by VTC on 29 October 2014.  Tried at Clearwater, Florida, on 8-12 December 2014.

| | |
|---|---|
| Military Judge (arraignment): | CAPT Christine N. Cutter, USCG |
| Military Judge (trial): | CDR Ian K. Thornhill, JAGC, USNR |
| Trial Counsel: | LT Jeremy T. McCall, USCGR |
| Assistant Trial Counsel: | LT Frances S. Johnson-Gillion, USCGR |
| Assistant Trial Counsel: | LT Brendan Sullivan, USCGR |
| Defense Counsel: | LT Jennifer M. Buyske, JAGC, USN |
| Assistant Defense Counsel: | LCDR Nathaniel Gross, JAGC, USN |
| Appellate Defense Counsel: | LT Philip A. Jones, USCGR |
| | LT Jason W. Roberts, USCGR |
| Appellate Government Counsel: | LT Tereza Z. Ohley, USCGR |
| | LT Sharyl L. Pels, USCGR |

## BEFORE
## McCLELLAND, HAVRANEK & BRUCE
### Appellate Military Judges

McCLELLAND, Chief Judge:

Appellant was tried by general court-martial composed of members, including enlisted members.  Contrary to his pleas, Appellant was convicted of three specifications of sexual assault and one specification of abusive sexual contact, all in violation of Article 120, Uniform Code of Military Justice (UCMJ).  The members sentenced Appellant to confinement for eighteen months, reduction to E-1, and dishonorable discharge.  The Convening Authority approved the sentence.

Before this Court, Appellant has assigned the following errors:

I.   Article 120(b)(3), UCMJ, is unconstitutionally vague because the level of impairment that renders a person incapable of consenting is undefined.

II.  The military judge erred by refusing to instruct the members as requested on the definition of "incapable".

III. The evidence is legally and factually insufficient to establish guilt.

IV.  The cumulative effect of errors denied Appellant a fair trial.

V.   The military judge plainly erred when he instructed members they must find Appellant guilty.[1]

We heard oral argument on the first two issues on 8 December 2016.

We see the convictions as both legally and factually sufficient, hence we summarily reject the third issue. We discuss the other issues, and affirm.

## Facts

After meeting online, Appellant and LH, a twenty-five-year-old woman, went to a movie together, and she agreed to go to his home the following evening. At his home, she drank a significant quantity of alcohol. LH later testified that she faded in and out over the next several hours. Although LH and Appellant agreed in advance that they would not engage in sexual activity that evening according to his statement (Prosecution Ex. 23 at 1), Appellant engaged in sexual activity with LH (*id.* at 2-3). LH testified that she did not remember much of the evening's encounter (R. at 13110-26, 13175-94, 13851-55, 13952-67, 14014-22)[2], but she felt pain (R. at 13153-54) and, at one point, attempted to push Appellant away (R. at 13156-58). Both Appellant and LH also reported that LH vomited several times during the sexual activity (Prosecution Ex. 23 at 3; R. at 13161-63). Nevertheless, Appellant continued to engage in sexual activity with LH. Eventually, LH asked Appellant to take her to a hospital, which he did. At the hospital, she was seen by an emergency room doctor. Based on her report to the doctor, she was interviewed by a police officer and examined by a Sexual Assault Nurse Examiner. Appellant

---

[1] Appellant's motion for leave to file this supplemental assignment of error was granted on 28 October 2016.
[2] Line numbers rather than page numbers are found in the transcript beginning on 9 December 2014.

was convicted, as already noted, of four specifications under Article 120, UCMJ, for his acts upon LH at his home on that occasion.


**Constitutional challenge to Article 120(b)(3)**

The specifications of which Appellant was found guilty allege that Appellant committed a sexual act or sexual contact upon LH when she "was incapable of consenting to the sexual act/contact due to impairment by an intoxicant." These specifications use the language of Article 120(b)(3), UCMJ. Appellant contends that Article 120(b)(3) is unconstitutionally vague because it "does not define what level of impairment renders a person incapable of consenting." (Appellant's Brief at 5.) He adds, more cogently, "The statute provides no guidance in determining who is 'incapable' of consenting." (*Id.* at 6-7.) In fact, the statutory language only requires an ". . . impairment by any drug, intoxicant, or other similar substance . . . ." Any level of impairment is sufficient if it renders the alleged victim incapable of consenting to the sex act and the incapacity is due to the impairment. The focus of the statute is on capability or incapability to consent, not on impairment.


We reject Appellant's contention. To withstand constitutional scrutiny, a statute must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Any level of impairment is sufficient under the statute if it renders the alleged victim "incapable of consenting" to the sex act. As the Court of Appeals for the Armed Forces recently indicated, the term "incapable of consenting" has a plain and ordinary meaning: lacking the cognitive ability to appreciate the sexual conduct in question or the physical or mental ability to make or communicate a decision about whether they agree to the conduct. *United States v. Pease*, 75 M.J. 180, 185-86 (C.A.A.F. 2016)). Because the meaning of this term is plain, the statute gives a person of ordinary intelligence fair warning of what conduct is prohibited. The statute thus is not unconstitutionally vague. *See Grayned*, 408 U.S. at 108; *accord United States v. Solis*, 75 M.J. 759 (N.M.Ct.Crim.App. 2016) (rejecting a vagueness challenge to Article 120(b)(3)).

Although the statute is quite clear on the conduct that is unlawful, the difficulty lies in answering whether a given person under the influence of an intoxicant is in fact capable of consenting. This difficulty is not a defect in the statute, but rather a reflection of the fact that intoxicants impact different individuals differently and that the capacity to consent is a subjective inquiry—essentially a question of fact for the members to determine based upon the unique facts of each case. *See United States v. Williams*, 553 U.S. 285, 306 (2008) ("What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is."). Moreover, the statute mitigates even this difficulty by requiring proof beyond a reasonable doubt that the incapacitated condition of the victim was known or reasonably should have been known to the accused. For these reasons, we reject Appellant's vagueness challenge.

### Requested instruction on "incapable"

Appellant complains that the military judge refused to give a defense-requested instruction on the definition of "incapable." The requested instruction pertains to the specifications of Charge II, which allege that LH was incapable of consenting to a sexual act or sexual contact due to impairment by an intoxicant. At oral argument, counsel conceded that the defense-requested instruction was incongruent with the definition of "incapable of consenting" approved by the Court of Appeals for the Armed Forces in *Pease,* and then alternatively asserted that the military judge should have given a *sua sponte* instruction consistent with the approved definition.

The military judge's denial of a requested instruction is reviewed for abuse of discretion. *United States v. Carruthers*, 64 M.J. 340, 345-46 (C.A.A.F. 2007) (citing *United States v. Damatta-Olivera*, 37 M.J. 474, 478 (C.M.A. 1993)). "We apply a three-pronged test to determine whether the failure to give a requested instruction is error: '(1) [the requested instruction] is correct; (2) it is not substantially covered in the main [instruction]; and (3) it is on such a vital point in the case that the failure to give it deprived [the accused] of a defense or seriously impaired its effective presentation.'" *Id.* at 346 (quoting *United States v. Gibson*, 58 M.J. 1, 7 (C.A.A.F. 2003) (alterations in original)).

Appellant's requested instruction was, in pertinent part, as follows:

> "Incapable" means a complete and total mental impairment and incapacity due to the consumption of alcohol, drugs, or similar substance; while asleep or unconscious; which rendered the alleged victim completely unable to appraise the nature of the sexual conduct at issue, completely unable to physically communicate unwillingness to engage in the sexual conduct at issue, or otherwise completely unable to communicate competent decisions.

(Defense Requested Findings Instructions dated 24 November 2014 at 4.)[3] Counsel briefly argued for the requested instruction. (R. at 15357-15369.) The military judge declined to include the requested instruction. (R. at 15373-15377.)

Appellant asserts that the instruction was necessary to eliminate the "vagueness problem" identified in Assignment I. We have rejected Appellant's contention that there is a vagueness problem. Appellant also asserts that the requested instruction was correct, not otherwise addressed in the instructions, and essential to his defense.

Appellant's argument fails at the first prong, as the requested instruction was not correct. By using the terms "complete and total" and "completely," the requested instruction would have suggested a requirement for absolute incapacity, a requirement that is not rooted in the statutory text. As we previously noted, "incapable of consenting" can be understood by a person of ordinary intelligence; no additional explanation is necessary. The additional language requested by Appellant would have imposed an unwarranted change to the ordinary meaning of "incapable of consenting". The military judge did not abuse his discretion by declining to give the requested instruction.

Concerning the assertion that the military judge was required to give the members additional instructions on the definition of "incapable of consenting," such as the definitions approved by the Court of Appeals for the Armed Forces in *Pease*, we see no basis for the notion that additional instructions were required. For the sound and persuasive reasons that a similar argument by the appellant in *United States v. Lovett*, 2016 WL 1762045 (Army Ct.Crim.App. 2016) (unpublished), was rejected, we are convinced that the military judge's instructions here,

[3] This document was omitted from the record of trial, but was added to the record by our order of 14 November 2016.

taken as a whole, were sufficient, under the circumstances of this case. *Pease* did not change the fact that "incapable of consenting" uses ordinary words in their ordinary meaning and can be understood by a person of ordinary intelligence. "Words generally known and in universal use do not need judicial definition," *United States v. Shepard*, 4 C.M.R. 79, 84 (C.M.A. 1952), particularly when a term is not technical and when members can generally understand the meaning of the term, *id*. No further instruction was required beyond what the military judge provided.

**Cumulative errors**

Appellant complains that cumulative errors deprived him of a fair trial. He cites six instances, five of which were subjects of defense objections.

A.

A Coast Guard Investigative Service special agent testified concerning his interviews with Appellant and Appellant's statements in response to the interviews. In answering a certain question, he mentioned that on the third day Appellant chose to exercise his right to counsel. (R. at 5720-21.) The defense objected; the military judge sustained the objection and told the members to disregard the answer. (R. at 5723-26.) The defense later moved for a mistrial based on this incident, which was denied. (R. at 7635-57.)

B.

The Sexual Assault Nurse Examiner who had examined LH testified that LH "seemed very believable." (R. at 8889-90.) The defense objected; the military judge sustained the objection and told the members to disregard the answer. (R. at 8891-93.) Later, the military judge cautioned trial counsel to control his witnesses, particularly by tightening up his questions. (R. at 9120-39.) The defense renewed the request for a mistrial, which was denied. (R. at 9146-59.)

Before trial began, the defense had moved *in limine* to prohibit any law enforcement officers from expressing an opinion as to Appellant's truthfulness during interrogations. (Appellate Ex. XVII.) This motion was unopposed. (Appellate Ex. XVIII.) When this motion

was addressed at trial, the military judge asked the defense if there was a specific concern. Counsel responded that when he interviewed her, the "forensic nurse" had expressed the opinion that the complainant appeared to be telling the truth. (R8 DEC at 75.) The military judge declared that generally, "nobody's witnesses are allowed to comment on whether someone's specifically being truthful or untruthful. . . . I'll trust that both sides have or will sufficiently prepare their witnesses to avoid any such testimony." (R8 DEC at 76.)

C.

A toxicologist testified for the Government as an expert witness. He testified concerning LH's reported blood alcohol concentration on the date in question, after which he was asked, "[W]hat does that tell you about the effects on a person if you have that information?" (R. at 11645-46.) He responded by asking whether he was to answer "strictly as toxicologist or including my medical knowledge?" (R. at 11648-49.) The defense objected. (R. at 11650.) The military judge told the witness, "Dr., you're here to testify as a toxicologist, so we're here to get your opinion as to the toxicological effects of this blood alcohol level so there's no confusion about what we're asking about here[.]" (R. at 11651-54.) The defense renewed the request for a mistrial, which was denied. (R. at 11670, 11697-99.)

Before trial began, the defense had sought a continuance, asserting that if the toxicologist was going to testify concerning the effect of alcohol on the complainant based not only on toxicological principles but also on certain disabilities of the complainant the toxicologist had learned about, the defense needed to investigate that information and consult with an expert on it. (Appellate Ex. XXI.) The military judge denied a continuance, but "limited the ability of [the toxicologist] to give an opinion to that of a toxicologist giving a general opinion about objective factors . . . ." (R8 DEC at 69-70.) The military judge also stated, "The government will be responsible for telling [the toxicologist] what he is and is not allowed to testify to here at this court-martial." (R8 DEC at 73.)

D.

The police officer who had responded to the hospital testified regarding his actions and observations. Initially he referred to the complainant as "the victim". (R. at 7856-66.) The

defense objected. (R. at 7867-69.) The military judge directed the officer to "use the term alleged or complaining witness", and instructed the members that "the term victim being used here is used only to describe again that there's an allegation here. It's not to be taken as conclusory[.]" (R. at 7876-81.)

Before trial began, the defense had moved *in limine* to prohibit the Government and its witnesses from using the term "victim". (Appellate Ex. XV.) This motion was unopposed. (Appellate Ex. XVI.) The military judge granted the motion. (R$_{8\ DEC}$ at 78.)

### E.

The emergency room doctor who saw LH testified that LH's serum alcohol level was 198 mg/deciliter. (R. at 7039-40.) She was asked what that number means. (R. at 7045-46.) The defense objected to the question as seeking improper expert testimony. (R. at 7048.) The military judge overruled the objection. (R. at 7085.) The witness answered, "That this patient is intoxicated. We use 80 for our legal definition, we use 100 when we want to be able to discharge a patient home unaccompanied, so above 100 we consider them legally intoxicated." (R. at 7129-32.) This response was not objected to. We do not see admission of the response as plain error, if it is error at all.

### F.

During closing argument on findings, trial counsel told the members, "[W]e know that you're in the Coast Guard. We know that we're here to save people. But we also know that we have to hold people accountable." (R. at 16879-81.) The defense objected. (R. at 16882-83.) The military judge sustained the objection, stating, "The case is about evidence presented here in court. Not about the members, so counsel will move on to something else. The members will disregard that argument." (R. at 16884-87.) The defense shortly thereafter moved for a mistrial, which the military judge denied. (R. at 17034-52.)

### Analysis of cumulative effect

Following the latter denial of mistrial, defense counsel called attention to "the cumulative effect of these issues." The military judge interpreted this statement as "a motion for mistrial

based upon the cumulative reasons that have been mentioned throughout the trial," and denied that motion.  (R. at 17054-59.)

A military judge has discretion, when it is manifestly necessary, to declare a mistrial based on circumstances that cast substantial doubt on the fairness of the proceedings.  Rule for Courts-Martial 915(a), Manual for Courts-Martial, United States (2012 ed.); *United States v. Brice*, 19 M.J. 170 (C.M.A. 1985); *see also United States v. Perez*, 22 U.S. (9 Wheat) 579 (1824).  When determining whether to reverse based on cumulative error, the court focuses its inquiry on whether the defendant received a fair trial.  *United States v. Pope*, 69 M.J. 328, 335 (C.A.A.F. 2011).

Here, the enumerated errors do not lead us to conclude that Appellant failed to receive a fair trial.  None of the six incidents identified was egregious, although three of them apparently resulted from Government dereliction as to witness preparation.  In each instance where an objection was raised, the military judge took immediate curative action.  Courts generally hold that such a remedy may be adequate, and is indeed preferred, for addressing minor evidentiary errors.  *See United States v. Evans*, 27 M.J. 34, 39 (C.M.A. 1988).  In addition, the existence of other relevant, properly admitted evidence dispels any concern that any improperly admitted evidence had anything more than a slight effect on the resolution of the case.  Given the nature of the errors, the evidence properly admitted during trial, and the military judge's curative actions, we are convinced that none of the incidents had a prejudicial effect and that the proceedings were fair notwithstanding these incidents.  We see no abuse of discretion in the military judge's denial of mistrial, and we reject the issue.

**Member instruction issue (directing verdict)**

Appellant asserts that the military judge erred by instructing the members, "If based on your consideration of the evidence you are firmly convinced of the truth of each and every element, you *must* find the accused guilty."  (Emphasis added by Appellant.)

We understand this issue is under review by the Court of Appeals for the Armed Forces in *United States v. McClour*, No. 16-0455/AF, and other cases. Until that court decides otherwise, we will follow the logic of its previous holding:

> [A] court-martial panel does not have the right to nullify the lawful instructions of a military judge. . . . Because there is no "right" of jury nullification, the military judge in this case did not err either in declining to give a nullification instruction or in declining otherwise to instruct the members that they had the power to nullify his instructions on matters of law.

*United States v. Hardy*, 46 M.J. 67, 75 (C.A.A.F. 1997). We see no error in the military judge's instruction.

## Defective findings

We note that, evidently due to a poorly drafted findings worksheet, when findings were announced, findings of guilty of the four specifications of Charge II under Article 120 were announced, but no finding was announced as to Charge II itself. This failure of the court to enter a finding as to the charge was harmless error, considering the finding of guilty as to each specification under the charge. *See United States v. Giermek*, 3 M.J. 1013, 1014 (C.G.C.M.R. 1977). Trial counsel and the military judge should ensure that the findings worksheet provides adequate and correct guidance to the court members.

## Decision

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings and sentence are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as approved below, are affirmed.

Judges HAVRANEK and BRUCE concur.



For the Court,

Sarah P. Valdes
Clerk of the Court