UNITED STATES, Appellee,

v.

Sergeant Tammie L. MITCHELL, 374–70–3743, United States Army, Appellant.

ARMY 9302152.

U.S. Army Court of Criminal Appeals.

17 Nov. 1994.

---

* Judge John E. Baker took final action on this case prior to his reassignment.

For Appellant: Lieutenant Colonel Peter V. Train, JAGC, USAR, Major Fran W. Walterhouse, JAGC, Captain Teresa L. Norris, JAGC (on brief).

For Appellee: Colonel John M. Smith, JAGC, Lieutenant Colonel James L. Pohl, JAGC, Major Lyle D. Jentzer, JAGC, Captain John W. O'Brien, JAGC (on brief).

Before LANE, CAIRNS, and RUSSELL, Appellate Military Judges.

## OPINION OF THE COURT

LANE, Senior Judge:

Pursuant to her pleas, the appellant was found guilty at a special court-martial empowered to adjudge a bad-conduct discharge of two specifications of wrongfully using marijuana, wrongful possession of marijuana, and disorderly conduct, in violation of Articles 112a and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 912a and 934 (1988) [hereinafter UCMJ]. The convening authority approved the sentence, adjudged by a panel of officer and enlisted members, to a bad-conduct discharge, forfeiture of $514.00 pay per month for six months, and reduction to Private E1.

Upon review of the record, we requested briefs on the following specified issue:

> WHETHER THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR BY DENYING THE APPELLANT'S MOTION TO COMPEL THE GOVERNMENT TO FUND TRAVEL FOR THE ATTENDANCE OF THE CHIEF OF CHAPLAINS, A GENERAL OFFICER, AS A SENTENCING WITNESS.

While ordering production of the witness at government expense would not have been unwarranted, we do not find an abuse of discretion by the military judge in this case.

### I. Facts

Prior to trial, the appellant's trial defense counsel made a timely written request for the attendance of Chaplain (Major General) Matthew Zimmerman, the Chief of Chaplains of the Army, as a sentencing character witness. After refusing to stipulate to Chaplain Zimmerman's testimony, the trial defense counsel provided more specific information concerning this witness. Specifically, seven years earlier, the appellant had been Chaplain Zimmerman's driver when the latter was a chaplain at Fort McPherson. Since then, they had maintained a continuing association which included officiating at the appellant's wedding, at her daughter's christening, and at her last reenlistment, and ongoing correspondence. The defense posited that Chaplain Zimmerman was well acquainted with

the appellant's character and potential for further service, and that his background and rank give great weight to the credibility of his testimony. It was also stated that Chaplain Zimmerman wished to testify and would arrange his duty schedule to accommodate the trial, and that his attendance would not interfere with any deployment, mission accomplishment, or training.

At an Article 39(a), UCMJ, session, the appellant testified in support of a "Motion to Compel Production of Witnesses," repeating much of the information already provided. After argument by counsel, the military judge stated:

> The motion to compel the production of Major General Zimmerman is denied. It seems that this is precisely the type of witness that the law would encourage the parties to come up with a stipulation on, and I so direct it.

Several days later, the defense presented its proposed stipulation of fact concerning Chaplain Zimmerman's testimony. When the trial counsel balked at a portion of the proposed stipulation, the military judge, after making some minor modifications, informed the trial counsel that "[i]f the Government doesn't wish to stipulate to that effect, then I would suggest you find a way to get General Zimmerman here at Government expense." At that point, the trial counsel accepted the stipulation. At the appropriate time in the sentence proceedings, the stipulation was read to the members.

## II. Applicable law

■ Article 46, UCMJ, 10 U.S.C. § 846, provides that all parties to a court-martial "shall have equal opportunity to obtain witnesses." Prior to the promulgation of the Rules for Courts-Martial, it was generally accepted that an accused had the right to have the testimony of a witness on sentencing when the testimony was material. *Unit-*

*ed States v. Combs,* 20 M.J. 441, 442 (C.M.A. 1985). If determined material,[1] the military judge had the discretion to decide the form in which that testimony would be presented. *Id.* (citing *United States v. Courts,* 9 M.J. 285, 292 (C.M.A.1980)).

The current rules governing presentencing procedures at courts-martial provide that the appearance of witnesses to testify during presentence proceedings "is a matter within the discretion of the military judge," subject to certain limitations. Rule for Courts–Martial 1001(e)(1) [hereinafter R.C.M.]. The "limitations" provide that a witness may be produced at government expense only if the expected testimony is necessary for consideration of a matter of substantial significance to a determination of an appropriate sentence; the weight or credibility of the testimony is of substantial significance in determining an appropriate sentence; the other party refuses to enter into a stipulation or the case is so extraordinary that such would be an insufficient substitute for appearance;[2] other forms of evidence would not sufficiently meet the needs of the court-martial in determining an appropriate sentence; "and" the significance of the personal appearance of the witness outweighs practical difficulties in producing the witness. R.C.M. 1001(e)(2). With regard to the last of the limitations, factors to be considered include the cost, the timing of the request, any potential delay in the proceedings, and the likelihood of significant interference with military operational deployment, mission accomplishment, or essential training. R.C.M. 1001(e)(2)(E).

■ As a matter within the discretion of the military judge, a denial of personal appearance of a witness will be tested for an abuse of discretion. R.C.M. 1001(e)(1); *Combs,* 20 M.J. 441; *Tangpuz,* 5 M.J. 426. An abuse of discretion exists when the reasoning or ruling of a trial judge is clearly

1. The issue on sentencing is, quite simply, what is a legal, appropriate, and adequate sentence for the accused on trial. *Combs,* 20 M.J. at 442. Favorable character evidence is a relevant factor in determining an appropriate sentence. *United States v. Tangpuz,* 5 M.J. 426, 429 (C.M.A.1978).

2. This portion of the rule points up the literal difficulty with this subsection of R.C.M. 1001. It

states that a witness may be produced at Government expense only if "the other party" refuses to enter into a stipulation. We interpret this provision to mean the party other than the proponent of personal appearance, and recommend that the Code Committee clarify the language of this rule consistent with this interpretation.

untenable and amounts to a denial of justice. *United States v. Travers,* 25 M.J. 61, 62 (C.M.A.1987). Reversal based on an abuse of discretion involves far more than a difference of opinion; an abuse of discretion exists only when the challenged ruling is arbitrary, fanciful, or clearly unreasonable or erroneous. *Id.* (quoting *United States v. Yoakum,* 8 M.J. 763 (A.C.M.R.), *aff'd on other grounds,* 9 M.J. 417 (C.M.A.1980)). Finally, an abuse of discretion may exist where the judge rendered his decision based upon factual, rather than legal, conclusions that lack evidentiary support. *Id.* at 63. Recognizing that the standard is a strict one, we find that the military judge reasonably applied the applicable rule and did not abuse his discretion in denying the request and directing the use of a stipulation of fact.

## III. Decision

■ The military judge's primary focus on the stipulation of fact as the proper vehicle for presenting this testimony—and as the only way the Government would avoid bringing the witness in person—tells us that he found the other factors in R.C.M. 1001(e)(2) compelling for the defense.[3] The chaplain's testimony would concern a matter of substantial significance (rehabilitation potential and retention in the service), it would carry weight with the members, and there were no practical difficulties in obtaining the witness in a timely fashion.[4]

This was the first motion following arraignment, and based on the facts before the military judge at that time, there was nothing to show that this case was "extraordinary" so that a stipulation would not suffice.[5] This is especially true as the military judge allowed the defense to fashion a strong stipulation that not only stated the witness' background and strong opinions about the appellant,[6] but also set out that his nonappearance was due to the Government refusing to fund his travel. In the final analysis, the appellant had all the benefits of Chaplain Zimmerman's support except his physical presence.[7]

We have considered the other matters submitted by the appellant pursuant to *United*

---

3. Note that this portion of the rule is written in the conjunctive.

4. As neither side proposed use of alternate evidence (an oral deposition, interrogatories, or former testimony), we assume that such did not exist. *See* R.C.M. 1001(e)(2)(D). Certainly, a stipulation of fact is equal to any of those as an alternative to appearance.

5. Had a situation developed during the course of the trial—such as the Government presenting the personal testimony of the current or former unit commander that the appellant lacked any rehabilitative potential—then the military judge could have reconsidered whether the case had become extraordinary so that Chaplain Zimmerman's appearance would be required in order to avoid "a denial of justice." *See Travers,* 25 M.J. at 62.

6. While the trial counsel took some hard, but fair, shots at the bases for Chaplain Zimmerman's opinions during his sentencing argument, those bases were never subjected to cross-examination.

7. An unstated, but obvious, major concern with bringing a witness from Washington, D.C. to Mannheim, Germany in these days of declining financial resources is the cost. Recently commands throughout the Army have reduced travel costs by conducting command conferences through the use of videoteleconferencing. This medium has also been used by judge advocates for training and for interviewing distant witnesses. In the latter situations, video interviews allow a counsel to gauge a witness' "presence" more accurately than is possible via telephone.

The use of one- and two-way television hook-ups for courtroom testimony has gained serious attention in the area of child witness-victims in sex abuse cases, where the child would suffer psychiatric harm by being made to appear in front of the defendant-abuser. This use of technology has been embodied in several state statutes and discussed in judicial opinions and law review articles. *See, e.g.,* Md.Cts. & Jud.Proc. Code Ann. § 9–102(a)(1) (1989); Tex.Code Crim. Proc.Ann. art. 38.071 (West, 1994); *Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990); *Gonzales v. State,* 818 S.W.2d 756 (Tex.Crim.App.1991); Stacey L. Jones, *Testimony Via Closed Circuit Television After Gonzales v. State: Is the Sixth Amendment Right to Confront Adverse Witnesses at Stake in Texas Criminal Trials?,* 44 Baylor L.Rev. 957 (1992). The focus in these discussions has been on video testimony on the merits, and so dealt mainly with the right of confrontation. This would not be a factor with a defense-requested witness on sentencing. This also would be in line with other developments in the area of courtroom technology. *See* Fredric I. Lederer, *Courtroom 21: The Legal and Practical Implications,* Ct. Technology Bull., March/April 1994, at 1.

*States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982), and find them to be without merit.

The findings of guilty and the sentence are affirmed.

Judge CAIRNS concurs.

RUSSELL, Judge, concurring:

I fully concur with my brethren's determination that the military judge did not abuse his discretion when he determined that this was not an extraordinary case when a stipulation of fact would be an insufficient substitute for Chaplain (Major General) Zimmerman's personal appearance. I write only to detail why I also conclude that the judge's decision is reasonable and rational.

Rule for Court–Martial 1001(e) establishes that during the presentence proceedings there shall be much greater latitude than on the merits to receive information by means other than testimony presented through the personal appearance of witnesses. Accordingly, once it has been determined that testimony is material on sentencing, the military judge has the discretion to decide whether there is an adequate substitute for the live testimony which would still enable the court-martial to determine an appropriate sentence. Generally, a stipulation of fact may be a sufficient substitute for live testimony where the content and credibility of the testimony is uncontested. See *United States v. Combs,* 20 M.J. 441 (C.M.A.1985) (stipulating to mother's testimony).

There is no doubt that use of the stipulation in this case deprived the appellant of the personal appearance of a witness who could be "very persuasive," "can get people to believe in him," and "has a way of winning people over." Moreover, the mere presence of such a high ranking officer in uniform promised to project vicariously a positive impression of the appellant.

On the other hand, the stipulation of fact amply depicted Chaplain Zimmerman as a uniquely gifted and extremely capable military officer with vast experience in assessing rehabilitative potential for military service. It perfected compelling testimony describing the appellant as an excellent soldier who, during a period of great personal stress, got caught up in episodal misconduct that was neither characteristic of her nature nor reflective of her potential for continuation on active duty. Finally, it captured his strongly held professional opinion that the appellant ought to be retained in the Army.

Most importantly, this powerful stipulation of fact was not challenged by the government. There was no opportunity to cross-examine Chaplain Zimmerman on any weaknesses in his basis of knowledge, or to otherwise diminish the power of his opinion by calling on him to defend it in light of the appellant's fairly gross departure from the standards of conduct expected from a non-commissioned officer charged with administering the unit's drug control program. Thus, neither the content nor credibility of Chaplain Zimmerman's testimony was ever controverted. At the time of the military judge's ruling, there was no indication whatsoever that the government intended to capitalize on Chaplain Zimmerman's absence by presenting any rebuttal evidence on the issue of rehabilitative potential.* Moreover, the government never did present such rebuttal or otherwise vigorously attack the stipulation. The government's case on sentencing focused on the seriousness of the offenses to which the appellant pled guilty, and on their adverse impact on innocent people.

Inasmuch as there was no challenge to the witnesses rank, position, expertise, basis of knowledge, or to the content or the credibility of his testimony, there is little reason to believe that his personal appearance would have significantly enhanced either his probity or the probativeness of his testimony. Thus,

---

* Where the government intends to take advantage of the stipulated testimony of a powerful defense witness by calling a live rebuttal witness from the chain of command, or by otherwise vigorously attacking the stipulated testimony, an "extraordinary case when such a stipulation of fact would be an insufficient substitute for the testimony" may be made out.

 

this is not the "extraordinary case" referred to in R.C.M. 1001(e)(2)(C) "when such a stipulation of fact would be an insufficient substitute for the testimony." It was, therefore, reasonable for the military judge to conclude that Chaplain Zimmerman's personal appearance was not significant to the determination of an appropriate sentence.